**2014 UT App 2**

**Larry KELLER, Plaintiff and Appellant,**

v.

**Gerardo J. MARTINEZ, Defendant and Appellee.**

**No. 20121064–CA.**

Court of Appeals of Utah.

Jan. 3, 2014.

Daniel O. Duffin and Cameron B. Dibb, Salt Lake City, for Appellant.

Mark T. Ethington, for Appellee.

Judge STEPHEN L. ROTH authored this Memorandum Decision, in which Judges GREGORY K. ORME and CAROLYN B. McHUGH concurred.

## Memorandum Decision

ROTH, Judge:

¶ 1 This case stems from a collision between two vehicles in a signal-controlled intersection. Larry Keller argues that Gerardo J. Martinez, who was turning left, had a duty under the Utah Traffic Code to yield to Keller, who was in the oncoming travel lane, even if Keller had run a red light. Keller asserts that the district court erred when it dismissed his case, having concluded that because Keller had failed to show that Martinez did not have a green left-turn arrow at the time of the collision, he had not borne his burden of showing that Martinez violated any duty to Keller. We affirm the district court's decision.

¶ 2 Keller and Martinez were involved in a two-car accident on Redwood Road in Taylorsville, Utah, in early 2008. Keller was traveling northbound through a signal-controlled intersection near Taylorsville High School. Martinez was turning left from the southbound lane into the school's parking lot when he collided with Keller's car in the intersection. Keller sued Martinez in negligence for damages to his vehicle, and Martinez raised a negligence counterclaim in response.

¶ 3 During a bench trial, both drivers claimed to have had the right-of-way. Keller testified that he stopped at a red light and then proceeded through the intersection after the signal turned green. In contrast, Martinez testified that *he* stopped at a red light and then turned left after he saw a green left-turn arrow. Martinez's wife corroborated his testimony that the left-turn arrow was green as Martinez turned left

through the intersection. Neither party presented any other evidence on the color of the light.

¶ 4 After hearing the conflicting testimony, the district court found, with regard to Keller's case, that "Mr. Martinez and his wife have given reasonably credible testimony that Mr. Martinez" turned left "when he had a green left turn arrow on the signal." Martinez's testimony therefore "suggest[ed], strongly, that Mr. Keller was running a red light." As a result, the court concluded that Keller "did not meet his burden of proof to show that [Martinez] did not have a green traffic light." The court reasoned that Keller needed to show that Martinez did *not* have a green light in order to establish that Martinez owed Keller a duty. Because negligence cannot exist without a duty, the court dismissed Keller's claim. The district court then dismissed Martinez's counterclaim on the same basis, concluding on the conflicting testimony that Martinez failed to prove that Keller did not have a green light. Martinez did not appeal from the decision on his counterclaim.

¶ 5 On appeal, Keller addresses only one point concerning the merits of the district court's decision.[1] He claims that "Martinez admitted that he was turning left in the intersection and that Keller was going straight through," which he contends is enough by itself to "establish[ ] a duty for Martinez." Thus, Keller implicitly argues that the color of his light was irrelevant, an argument that he also raised at trial: "Even if [Keller] ran a red light[, Martinez] has the duty to yield the right-of-way to somebody . . . going straight through" the intersection. According to Keller, left-turning drivers must always yield to through traffic and therefore Keller's only burden was to prove that he was going straight through the intersection and that Martinez was turning left, which were both undisputed. Thus, according to Keller, Martinez owed Keller a duty based simply on the fact that Martinez was making a left turn and the district court erred when it dismissed Keller's case without addressing the other three elements of negligence—breach, causation, and damages, *see Webb v. University of Utah*, 2005 UT 80, ¶ 9, 125 P.3d 906 (explaining that the "four essential elements" are duty, breach, proximate cause, and damages (citation and internal quotation marks omitted)).

¶ 6 In support of his theory, Keller cites section 903 of the Utah Traffic Code, which he argues imposes a duty on all left-turning drivers to yield the right-of-way to *"any* vehicle approaching from the opposite direction" that constitutes an immediate hazard. *See* Utah Code Ann. § 41–6a–903(1) (LexisNexis 2010) (emphasis added).[2] He also directs us to *French v. Utah Oil Refining Co.*, 117 Utah 406, 216 P.2d 1002 (1950), in which the Utah Supreme Court explained the purpose of an older but substantially similar version of section 903: "When a statute prescribes that a turning vehicle must yield the right-of-way . . . a burden is placed on the driver making the turn as he has control of the situation." *Id.* at 1004. According to Keller, section 903 and *French* render the color of Martinez's traffic light irrelevant—Martinez, as the person turning left, should have yielded to "any vehicle approaching," Utah Code Ann. § 41–6a–903(1), even if that vehicle was running a red light, because he was in a better position to control the situation.

¶ 7 Martinez counters that section 903 does not apply to this case. Instead, he contends that section 305 of the Utah Traffic Code, which addresses rights-of-way at signal-controlled intersections, applies. *See id.* § 41–6a–305 (LexisNexis Supp.2013). According to section 305, a vehicle facing a left-turn arrow "may cautiously enter the intersection . . . to make the movement indicated by the arrow" but must yield to "other traffic *lawfully* using the intersection." *Id.* § 41–6a–305(2)(b) (emphasis added). Therefore, Mar-

---

**1.** Keller asserts in his statement of the issues that "[n]o judgment, order or finding was made regarding the 'right of way,'" indicating that he is challenging the adequacy of the findings. Keller's analysis section, however, is dedicated fully to the merits of the court's decision to dismiss his case. We therefore do not consider the adequacy argument.

**2.** All pertinent sections of the Utah Traffic Code existed in the same form at the time of the accident in 2008.

tinez claims, the color of his light is very much at issue—a driver turning left on a green arrow need not yield to a driver running a red light because the vehicle running the red light is not "lawfully using the intersection." *See id.* § 41–6a–305(2)(b), (4)(a) ("[T]he operator of a vehicle facing a steady circular red ... (i) may not enter the intersection ... and (ii) shall stop at a clearly marked stop line ... and shall remain stopped until an indication to proceed is shown."). Because each party relies on a different provision of the traffic code, we must first determine which one applies under the facts of this case.

¶ 8 Section 903 falls within part 9 of the traffic code that regulates rights-of-way when at least one vehicle's action is not subject to more specific regulation. *See, e.g., id.* § 41–6a–901 (LexisNexis 2010) (right-of-way in unregulated intersection); *id.* § 41–6a–902 (right-of-way at stop or yield signs); *id.* §§ 41–6a–904,–905 (LexisNexis 2010 & Supp. 2013) (right-of-way in presence of emergency vehicles, highway construction vehicles, and pedestrians). Thus, the right-of-way rule described in section 903 exists as a baseline; it controls the duty of left-turners generally. For example, section 903 applies to cars turning left from an arterial road onto a collector or local road because no signals or signs supersede the general rights-of-way. In such situations, turning cars must yield to any approaching vehicle that constitutes a hazard because, as stated in *French,* the turning driver holds superior control over the situation.

 ¶ 9 Part 3, on the other hand, regulates the use and effect of "traffic-control devices used on a highway." *Id.* § 41–6a–301(1). In particular, section 305 governs signal-controlled intersections and the rights-of-way that apply to any given signal combination. *Id.* § 41–6a–305 (LexisNexis Supp. 2013). A basic rule of statutory construction provides that statutes that address specific circumstances "control over more general ones" where those circumstances are present. *Peak Alarm Co. v. Werner,* 2013 UT 8, ¶ 19, 297 P.3d 592 (citation and internal quotation marks omitted). The accident in this case occurred while Martinez was turning

left and Keller was proceeding straight through a signal-controlled intersection. Therefore, the right-of-way rules identified in section 305 apply here, not the more general rule described in section 903 that Keller has relied on both in the district court and on appeal.

 ¶ 10 Having determined that section 305 applies, we examine its effect on Keller's appeal. Because Martinez has not appealed from the dismissal of his claim against Keller, we review the evidence from the perspective of the court's resolution of Keller's claim. *ProMax Dev. Corp. v. Mattson,* 943 P.2d 247, 250 n. 1 (Utah Ct.App.1997) ("On appeal from a bench trial, we view the evidence in a light most favorable to the trial court's findings...."). Martinez presented evidence that he was proceeding through a green left-turn arrow when he struck Keller. The district court found Martinez's testimony credible and determined that this testimony "suggest[ed], strongly, that Mr. Keller was running a red light." From those findings, the most reasonable inference that can be drawn—indeed, the basis for Keller's argument—is that Keller had entered the intersection on a red light.

¶ 11 Under section 305, the operator of a vehicle facing a red light must yield the intersection while the operator of a vehicle facing a green turn arrow "may cautiously enter the intersection ... to make the [turn] indicated by the arrow" and is required to "yield the right-of-way" only to pedestrians and "other traffic lawfully using the intersection," Utah Code Ann. § 41–6a–305(2)(b), (4)(a) (LexisNexis Supp.2013). Therefore, Keller was required to yield the intersection to Martinez, whose green arrow gave him the right-of-way. Certainly, even with the green arrow, Martinez could proceed into the intersection so long as he did so "cautiously." *See id.* § 41–6a–305(2)(b)(i). That is, a green arrow never permits a driver to proceed carelessly, oblivious to the conditions at hand; the driver must take reasonable precautions to avoid a collision.

¶ 12 We acknowledge that if Martinez failed to *"cautiously* enter the intersection," then he and Keller could both be in breach of their respective duties. In such cases, courts

typically compare the negligence of each actor. *See id.* § 78B–5–818(4) (LexisNexis 2012) ("The fact finder may, and when requested by a party shall, allocate the percentage or proportion of fault attributable to each person seeking recovery...."). Although Keller sometimes alludes to Martinez's failure to keep a proper lookout in his briefing, he has not made any analysis of the parties' relative duties and breaches under a theory of comparative negligence; rather, he argues simply that he had a superior right-of-way to Martinez, who, because he was making a left turn, was required to yield to Keller, even if Keller was running a red light. *See generally Allen v. Friel,* 2008 UT 56, ¶ 7, 194 P.3d 903. Under section 305, however, assuming that Martinez had a green arrow, as we must, Martinez had the superior right-of-way because Keller was not "lawfully using the intersection." *See* Utah Code Ann. § 41–6a–305(2)(b)(ii) (LexisNexis Supp.2013). Nor did Keller argue comparative negligence to the trial court. *See generally Main St. v. Easy Heat, Inc.,* 2004 UT 72, ¶ 51, 99 P.3d 801. Thus, because section 305 applies here, rather than section 903, Keller has failed to persuade us that the district court erred in ruling against him.

¶ 13 In sum, we affirm the district court's conclusion that Keller failed to meet his burden of proof that Martinez was negligent because section 305 applies and Keller failed to demonstrate that Martinez did not have a green light or that Keller did.