**2019 UT App 57**

# THE UTAH COURT OF APPEALS

LUIS LUNA,
Appellant,
*v.*
MARIA LUNA,
Appellee.

Opinion
No. 20170994-CA
Filed April 11, 2019

Third District Court, Salt Lake Department
The Honorable James D. Gardner
No. 160903176

Daniel F. Bertch, Attorney for Appellant

Joel D. Taylor and Matthew D. Church,
Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES KATE APPLEBY and JILL M. POHLMAN concurred.

HARRIS, Judge:

¶1     While giving her brother Luis Luna (Luna) a ride to work, Maria Luna (Sister) was involved in an automobile accident in which Luna was injured. Luna sued Sister for negligence, yet during depositions testified unequivocally that the traffic light was green in Sister's favor. Sister contends—and we agree—that this testimony constitutes a binding judicial admission that Luna cannot contest at trial, and we therefore conclude that the district court properly entered partial summary judgment against Luna on the issue of whether the light was green. While this fact alone does not entitle Sister to complete summary judgment, the court's entry of judgment in Sister's favor was appropriate on the facts of this case, where Luna produced no evidence of negligence other than potential

testimony about the color of the traffic light. We therefore affirm the district court's summary judgment order, as well as a challenged discovery order.

BACKGROUND

¶2 Sister was giving Luna a ride to work one morning when their vehicle was struck by another driver (Driver) at an intersection controlled by a traffic light. Because Driver and Sister each entered the intersection perpendicular to one another, the light could not have been green for both of them. Luna sustained injuries from the accident, and eventually brought suit against both Driver and Sister for negligence and other related claims. In his complaint, Luna alleged that Driver had caused the accident by running a red light or, in the alternative, that Sister had caused the accident by running a red light. Luna also alleged that both drivers had failed to maintain a proper lookout and failed to yield to the other vehicle.

¶3 All parties to the suit were deposed, and Sister and Driver each testified that they had the green light when they entered the intersection. Luna was deposed twice and, during each deposition, his testimony was given through a Spanish-language interpreter. Each time, he testified—repeatedly—that the light was green for Sister when she entered the intersection. At his first deposition, he testified as follows:

> Q. Did you see the color of the light as you were entering the intersection?
>
> A. Yes. It was green.
>
> Q. How long had the light been green before you entered the intersection?
>
> A. Since we went through it until it hit us.

Q. How many seconds had the light been green before you entered the intersection?

A. I would not be able to tell you.

. . . .

Q. You don't know how far back you were from the intersection when you first noticed the color of the light?

A. I will repeat myself. It was green when we went through it.

. . . .

Q. So what I want to know is exactly where was your car in relation to the intersection when you first noticed the color of the light. . . . I'm just trying to figure out where you were when you first noticed the light.

A. Well we saw it—we were driving, we saw that it was green, and when we passed through the intersection it was already green. We were okay.

. . . .

Q. Was the light always green from the moment that you first saw it until the moment of the impact?

A. Yes.

¶4     Three weeks later, Luna was again deposed. Though he stated that he did not give the road the same attention as he would have had he been the one behind the wheel, he again

emphasized that the light was green when Sister entered the intersection:

> Q. Now based on your previous testimony the last time we were here, you were absolutely adamant that the light was green as you proceeded through the intersection; is that correct?
>
> A. Yes.
>
> . . . .
>
> Q. You were in the car the day the accident happened; correct?
>
> A. Yes, of course.
>
> Q. You saw the light was green as you were going through the intersection; correct?
>
> A. Well, I'll tell you again, yes, I was looking, but I wasn't looking to see who else was looking. I was merely focused on the idea that I was headed to work. So I'll tell you again, all I had on my mind was what I would be doing when I got to work, and that's what occupied my thinking. . . . Any other type of question I couldn't tell you, but my attorney could tell you.
>
> Q. Did you see the light green as you proceeded through the intersection?
>
> A. Yes.

¶5    During the second deposition, defense counsel asked Luna about his opinion of Sister's driving on the day in question:

> Q. So in terms of the accident, do you have any problems with the way your sister operated her vehicle on the day of the accident?
>
> [Luna asks for the question to be repeated]
>
> A. Well, no. To me, I mean, with all that's happened to me, and I'll tell you again, things have changed. So it was one thing before and now it's different in terms of how I am. Everything has changed for me, and that's why I am putting forth this suit with [Sister]. I don't think I could say anything more. I would defer to my attorney.
>
> Q. Well, you just answered my question, and I want to just confirm it that you just said that you had no problems with the way [Sister] operated her vehicle on the day of the accident. Is that what you said?
>
> A. Yes.

¶6    Luna eventually reached a settlement with Driver, who was then dismissed from the case. Thereafter, Sister filed a motion for summary judgment, arguing that there was no genuine dispute as to material facts between Luna and Sister, because each of them agreed not only that the light was green, but also that Sister was properly operating her vehicle. In opposition to Sister's motion, Luna pointed only to the conflicting testimony of Driver regarding the color of the traffic light, arguing that,

> [Luna's] testimony is disputed by [Driver]. . . . The jury is no more bound by [Luna's] testimony than [Sister's]. The jury might conclude that [Luna's] testimony was protective of [Sister], and conclude that [Driver] was truthful . . . . Or the jury might attribute only a small percentage of fault to [Sister].

Luna offered no other evidence to show negligence, attaching only two pages of Driver's deposition testimony in which Driver testified that his light was green. Specifically, Luna offered no evidence that Sister was driving improperly by, for instance, failing to keep a proper lookout, speeding, or driving while distracted.

¶7     The district court held a hearing, after which it requested supplemental briefing from the parties on whether some of the statements Luna made in his deposition should be considered binding admissions. Sister argued that Luna's statements were "judicial admissions" that Luna should be precluded from contradicting. Luna acknowledged that he had consistently testified that the light was green, but argued that his testimony was ordinary testimony that a jury should be able to disregard in favor of Driver's account of the relevant events. After oral argument, the district court determined that Luna's deposition testimony—including both his statements about the color of the light as well as his statements about how Sister was driving her vehicle—contained judicial admissions that he was not free to contradict, and that therefore summary judgment was appropriate in favor of Sister.

¶8     During the course of the litigation, Luna designated his treating physicians as non-retained expert witnesses who may testify at trial in support of his claims. After some litigation about the propriety of those disclosures, Sister's counsel noticed and took the depositions of two of Luna's treating physicians. The parties were unable to agree on which party, if any, should

pay the fees charged by the treating physicians for their time spent in deposition and, after the depositions were taken, Luna filed a statement of discovery issues asking the court to compel Sister to pay those fees. Luna argued that rule 26(a)(4)(B) of the Utah Rules of Civil Procedure required Sister to do so, because she had requested the depositions. Sister objected to the statement, arguing that the rule required a party to pay an expert's professional fee for attending a deposition only if the expert was a retained expert. The court issued an order denying Luna's statement of discovery issues on the same day it issued its grant of summary judgment in favor of Sister.

## ISSUES AND STANDARDS OF REVIEW

¶9 Luna appeals the district court's orders, and asks us to consider three issues. First, Luna argues that the district court erred in treating his deposition statements as non-rebuttable judicial admissions. "We review the legal questions underlying the admissibility of evidence for correctness and the district court's decision to admit or exclude evidence for an abuse of discretion." *Rocky Mountain Power Inc. v. Marriott*, 2018 UT App 221, ¶ 18 (quotation simplified); *see also Caponi v. Larry's 66*, 601 N.E.2d 1347, 1355 (Ill. App. Ct. 1992) ("The determination of whether a party's statement is sufficiently unequivocal to be considered a judicial admission is a question of law.").

¶10 Next, Luna argues that the district court erred in dismissing the entire action, because even if the traffic light is conclusively considered to be green, this fact did not necessarily establish that Sister was not negligent. "[W]e review a district court's grant of summary judgment for correctness, affording no deference to the court's legal conclusions." *Poulsen v. Farmers Ins. Exch.*, 2016 UT App 170, ¶ 8, 382 P.3d 1058.

¶11 Lastly, Luna argues that the district court abused its discretion when it did not require Sister to pay the hourly

professional fee charged by Luna's treating physicians for appearing at depositions taken by Sister. "We review discovery rulings for an abuse of discretion." *Dahl v. Harrison*, 2011 UT App 389, ¶ 11, 265 P.3d 139, *abrogated on other grounds by R.O.A. Gen., Inc. v. Chung Ji Dai*, 2014 UT App 124, 327 P.3d 1233.

ANALYSIS

I

¶12    First, Luna argues that the district court erred by deeming conclusive—as non-rebuttable judicial admissions—Luna's sworn deposition testimony that the traffic light was green as Sister drove into the intersection and that he had no concerns with the manner in which Sister was operating her vehicle. Luna asserts that his testimony should be treated as ordinary evidence that a factfinder is free to ignore in favor of other competent evidence. In resolving this issue, we first consider, under Utah law, whether and under what circumstances a party's testimony may be deemed a non-rebuttable judicial admission. We then analyze the two statements at issue and conclude that Luna's statement that "the light was green" is a conclusive judicial admission, but that Luna's statement about Sister's driving does not qualify as such.

A

¶13    Before beginning our analysis, we consider it necessary to carefully frame the question presented in this case. Here, Luna is not seeking to alter or change his deposition testimony, and therefore we are not confronted with the question of whether Luna ought to be permitted to contradict his deposition testimony with his own affidavit or testimony. Whether a party may alter his or her own deposition testimony with a later-filed

contradictory affidavit in an attempt to create a factual issue is a question with which Utah appellate courts have already grappled. *See, e.g.*, *Webster v. Sill*, 675 P.2d 1170, 1172–73 (Utah 1983) (stating that "when a party takes a clear position in a deposition, that is not modified on cross-examination, he may not thereafter raise an issue of fact by his own affidavit which contradicts his deposition, unless he can provide an explanation of the discrepancy"); *Gaw v. Department of Transp.*, 798 P.2d 1130, 1140–41 (Utah Ct. App. 1990) (applying *Webster* and stating that a party may vary his deposition testimony if he has an explanation for doing so that is "plausible"). In both of these cases, the question presented is one of admissibility: whether a party opposing summary judgment is allowed to create an issue of fact by presenting his or her own affidavit at odds with his or her previously-rendered deposition testimony.

¶14    That is not the question at issue here, because Luna is content with the state of his deposition testimony and makes no effort to alter it. Instead, Luna seeks to introduce evidence from a different witness—rather than from his own mouth—to call into question his own testimony. This case therefore presents a distinct issue: where a party either does not wish to, or is not allowed to, change a factual admission made during a deposition, what is the evidentiary effect of that admission? And, specifically, should that party's admission be deemed conclusive, such that the party will not be allowed to introduce evidence from other sources to contradict it?

¶15    In Utah, as in other jurisdictions, a party's admission of fact in a pleading is normally treated as a conclusive admission that the party is not later permitted to contradict, even with evidence from other sources. *See Baldwin v. Vantage Corp.*, 676 P.2d 413, 415 (Utah 1984) ("An admission of fact in a pleading is a judicial admission and is normally conclusive on the party making it."); 2 *McCormick on Evidence* § 257 (7th ed. 2016) (stating that pleadings "are used as judicial and not as evidentiary

admissions, and they are conclusive until withdrawn or amended"); 29A Am. Jur. 2d *Evidence* § 788 (2d ed. 2019) ("Stipulations and admissions in the pleadings are generally binding on the parties and the court."). Statements made in depositions are not exactly the same thing as statements made in pleadings, and no Utah court has yet given definitive guidance about whether, and under what circumstances, a party will be conclusively held to statements he makes in a deposition.

¶16 Commentators and courts in other jurisdictions have directly addressed the issue, though, and have identified two basic approaches. *See* 2 *McCormick on Evidence* § 258. Some jurisdictions treat the sworn testimony of a party like that of any other witness, allowing parties to contradict their own statements with the testimony of other witnesses. *Id.*; *see also, e.g.*, *Whitmire v. Ingersoll-Rand Co.*, 109 Cal.Rptr.3d 371, 379–80 (Cal. Ct. App. 2010) ("[N]either a party's deposition testimony nor its responses to interrogatories constitute incontrovertible judicial admissions of a fact that bar the party from introducing other evidence that controverts the fact." (quotation simplified)); *D.R. Horton, Inc.-Denver v. D&S Landscaping, LLC*, 215 P.3d 1163, 1170 (Colo. App. 2008) (stating that deposition testimony "is not a judicial admission absolutely binding on that party" and may be contradicted by the party who gave it (quotation simplified)). But other jurisdictions consider a party's sworn deposition testimony to be binding on that party, provided that the statements are unequivocal and made about facts within the party's knowledge. 2 *McCormick on Evidence* § 258; *see also, e.g.*, *Hansen v. Ruby Constr. Co.*, 508 N.E.2d 301, 304 (Ill. App. Ct. 1987) (stating that unequivocal "assertions made in a deposition constitute binding judicial admissions"); *Yockey v. State*, 540 N.W.2d 418, 421 (Iowa 1995) (stating that "the rule is well established that" a party will be held to unequivocal deposition testimony "as an informal judicial admission"); *Body v. Varner*, 419 S.E.2d 208, 211 (N.C. Ct. App. 1992) (stating that "unequivocal and unambiguous" statements made by a party at

a deposition are "judicial admission[s] and are conclusively binding"); *Aguirre v. Vasquez*, 225 S.W.3d 744, 756 (Tex. App. 2007) (stating that a party's statement at a deposition "will be treated as a true judicial admission" that is "conclusive on the party making it," so long as certain factors are met). Leading legal encyclopedias appear to espouse the second approach. *See, e.g.*, 29A Am. Jur. 2d *Evidence* §§ 783–84 (stating that "[a] judicial admission is a party's unequivocal concession of the truth of a matter, and removes the matter as an issue in the case," and that "statements made during a discovery deposition" can "be held to be judicial admissions" under appropriate circumstances); 32A C.J.S. *Evidence* § 1650 (2019) (stating that "a party's deposition testimony may be treated as a judicial admission" under appropriate circumstances). We think the second approach is the better rule, for two reasons.

¶17    First, allowing cases to proceed to trial when the two parties do not disagree about the matter to be tried is a poor use of our limited judicial resources. The main function of the judicial system in our society is to act as a forum for the fair and impartial resolution of bona fide disputes between parties. "Private-rights disputes lie at the core of the historically recognized judicial power." *Jenkins v. Swan*, 675 P.2d 1145, 1149 (Utah 1983) (quotation simplified). To this end, "[t]he courts [have] developed ways of identifying and categorizing particular grievances, techniques for the receipt of information, and principles for arriving at a resolution of these disputes," *id.*, always with the end goals of justice and truth in mind, *see, e.g.*, *Moler v. CW Mgmt. Corp.*, 2008 UT 46, ¶ 12, 190 P.3d 1250 (describing the "truth-finding function of courts"); *see also, e.g.*, Utah R. Evid. 102 ("These rules should be construed so as to administer every proceeding fairly . . . to the end of ascertaining the truth and securing a just determination.").

¶18    If two parties do not actually have a dispute about a particular issue, there seems little point in bringing the power of

the judicial system to bear to weigh in on the matter. *See Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1262 (10th Cir. 2004) (McConnell, J., concurring) (stating that "courts exist to resolve live controversies, to remedy wrongs, and to provide prospective relief," and are "not debating societies" convened for the purpose of discussing academic questions); *State v. Smith*, 401 P.2d 445, 447 (Utah 1965) (stating that "[t]he resolution of disputes is the purpose for which courts and juries exist"). Judicial resources are finite, and courts have enough to do without spending time and effort on cases in which the litigants do not disagree. Indeed, to allow a party to pursue recovery under a set of facts that he himself has sworn to be false would run counter to the goals courts are designed to further.

¶19    Second, there is something unjust about allowing a litigant to convene a trial so that a jury can determine if the facts are other than what the litigant swears they are. As one court put it, a litigant should not be permitted to "make out a better case for himself than he himself has testified to where his case involves facts within his own knowledge." *Bell v. Harmon*, 284 S.W.2d 812, 816 (Ky. 1955). Allowing otherwise may tempt a party to commit perjury, *see Hansen*, 508 N.E.2d at 304 (explaining that one "frequently stated purpose of the doctrine of judicial admissions is to eliminate the temptation to commit perjury"), "would be tantamount to permitting him to say for his own advantage that his own testimony should be regarded as false, and that of some other witness as true," *Bell*, 284 S.W.2d at 816, and would open the door for litigants to argue that they should recover despite their own sworn statements to the contrary, *see Aguirre*, 225 S.W.3d at 757 ("The policy underlying this rule is that it would be unjust to permit a party to recover after it has negated its right to recover by clear, unequivocal evidence."); *Hodnett v. Friend*, 352 S.E.2d 338, 340–41 (Va. 1987) (holding that, with regard to "a statement of fact, [a party] cannot expect a court or jury to believe that he has not told the truth in making the statement" (quotation simplified)); 32A

C.J.S. *Evidence* § 1649 ("[I]t would be absurd and unjust to allow a party to recover after he or she has clearly and unequivocally sworn to facts that defeat his or her cause of action or defense.").

¶20 Luna points out that he is allowed to plead his case using alternative theories of recovery, and argues that considering his deposition testimony as conclusive would curtail his ability to plead in the alternative. Modern rules do allow parties to plead alternative theories of relief, s*ee Helf v. Chevron U.S.A. Inc.*, 2015 UT 81, ¶¶ 72–74, 361 P.3d 63 (observing that the old rules that did not allow pleading in the alternative "frequently result[ed] in injustice," and that the modern, liberal pleading standards "ha[ve] eliminated this harsh interpretation" and now "allow parties the opportunity to fully adjudicate their claims on the merits" (quotations simplified)), and even allow parties to plead facts in the alternative in cases where the facts are unknown or disputed, *see* 32 C.J.S. *Evidence* § 546 ("When a pleader pleads alternatively or inconsistently, such allegations may not be used against the pleader, at least, in the case of alternative fact allegations, where such allegations are made in good faith and based on genuine doubt." (quotation simplified)); 29A Am. Jur. 2d *Evidence* § 791 ("The pleader states facts in the alternative because he or she is uncertain as to the true facts, so that the pleader is not 'admitting' anything other than uncertainty . . . ."). But once the potentially disputed factual issues necessitating alternative pleading are resolved, the need for alternative pleading is eliminated. *Cf. Helf*, 2015 UT 81, ¶ 76 (stating that "[o]nce the fact-finder and the judge have resolved all factual and legal disputes related to the inconsistent theories of liability, the plaintiff is then entitled to the one remedy (if any) that is supported by the final determination of the law and the facts").

¶21 This case illustrates the point. Here, Sister does not assert—and we do not discern—anything inappropriate about the fact that, in his original complaint, Luna pled facts about the color of the light in the alternative. At the time parties file

complaints, they may not have all of the facts at their disposal, and may be uncertain as to their true state. At the time Luna filed his complaint, we can perhaps give him the benefit of the doubt about whether he was completely sure about the color of the traffic light at the time Sister entered the intersection. But after discovery was complete, the record contained Luna's sworn deposition testimony, in which he repeatedly and unequivocally stated that the light was green in Sister's favor. At that point, Luna no longer has any colorable basis upon which to plead that the light was anything other than green, and therefore there is no longer any role for "alternative facts."

¶22    For these reasons, then, we reject Luna's argument that all statements a party makes at a deposition are nothing more than ordinary evidentiary admissions that can never constitute conclusive judicial admissions. We think the better rule—and the one we adopt here—is that a party's sworn deposition statements, provided certain factors are present, can constitute binding judicial admissions.

B

¶23    Next, we consider the precise circumstances under which a party will be conclusively deemed to have admitted a matter in a deposition. Our review of both Utah case law and persuasive authority from other jurisdictions reveals that four factors largely drive the analysis and that, in order to be considered a binding judicial admission, a statement must meet all four of the following criteria.

¶24    First, the statement at issue must be made under oath in the course of the current judicial proceeding. *See Aguirre v. Vasquez*, 225 S.W.3d 744, 756 (Tex. App. 2007). This requirement puts parties on notice of the gravity of their statements and the need to be both thoughtful and forthright in what they say.

¶25   Second, the testimony in question must be clear and unequivocal—that is, it must not be ambiguous or susceptible to multiple interpretations, there must be no contention that the party made any mistake in their testimony, and there must not be any rational or sufficient explanation for the discrepancy between the testimony and the pleadings. *See id.* (noting that "the hypothesis of mere mistake or slip of the tongue must be eliminated" (quotation simplified)). Parties sometimes misspeak, misunderstand, or simply fall prey to the frailties of human memory. *See Webster v. Sill*, 675 P.2d 1170, 1173 (Utah 1983). Parties testifying through an interpreter, or in a language that is not their first, might be particularly susceptible to providing equivocal testimony. But if a party testifies unambiguously about a fact within the party's personal knowledge, and there exist no concerns that the party failed to understand the question or that the party's testimony is otherwise unreliable, the party rightly should be held to that testimony.

¶26   Third, the statement in question must be about a factual issue within the party's personal knowledge, rather than about a matter of opinion, ultimate fact, or legal conclusion. *See Hansen v. Ruby Constr. Co.*, 508 N.E.2d 301, 305 (Ill. App. Ct. 1987) (stating that "[f]or testimony to be binding, it must also be peculiarly within the knowledge of the deponent"); *Yockey v. State*, 540 N.W.2d 418, 421 (Iowa 1995) (stating that, to be a judicial admission, a statement at a deposition must be about "a concrete fact, not [about] a matter of opinion, estimate, appearance, inference or uncertain memory" (quotation simplified)); *Celli v. Santos*, 888 P.2d 1067, 1069 (Or. Ct. App. 1995) (stating that "[w]hen a party testifies about a series of observations that express matters of opinion, judgment, estimate, inference or uncertain memory, as opposed to concrete facts peculiarly within the party's own knowledge, the court should allow for the obvious possibility of mistake by allowing consideration of all available evidence"). *But see Body v. Varner*, 419 S.E.2d 208, 211 (N.C. Ct. App. 1992) (allowing even statements going to

ultimate issues like "negligence" to qualify as judicial admissions). Legal conclusions are for courts to determine. And statements about matters of opinion, including statements going to ultimate issues—for instance, whether a party was negligent or whether a party acted reasonably—are not the sort of fact-bound statements that logically lend themselves to being treated as binding admissions.

¶27 Finally, giving conclusive effect to the testimony must be consistent with the public policies of conserving judicial resources, preventing perjury, and advancing the quality of justice. *See supra* ¶¶ 17–20; *see also Aguirre*, 225 S.W.3d at 756 (stating that a declaration will not be considered a binding judicial admission unless "the giving of conclusive effect to the declaration will be consistent with the public policy upon which the rule is based" (quotation simplified)). There may exist situations in which the first three factors are met but in which holding a party to his testimony would be unjust or at odds with the policies underlying the rule. Our test provides trial judges with the flexibility to address such (presumably unusual) situations.

¶28 Accordingly, we hold that a party's statement will be considered a binding judicial admission only if all of the following criteria are met: (1) the statement is made under oath during the course of the judicial proceeding; (2) the statement is clear and unequivocal; (3) the statement is about a factual matter within the party's personal knowledge (as opposed to a statement offering an opinion or legal conclusion); and (4) giving binding effect to the statement would be consonant with the policies underlying the "judicial admission" rule.

C

¶29 Next, we must apply this test to the two categories of statements Luna made during his deposition: (1) his statements

that the traffic light was green; and (2) his statement that he "had no problem with" the manner in which Sister operated her vehicle on the day of the accident. Sister seeks to hold Luna to both categories of statements. We agree with Sister that Luna's statements about the color of the traffic light meet the criteria required to be considered judicial admissions and should therefore be considered as such, but we agree with Luna that his statement about the way in which Sister was driving does not meet the criteria.

1

¶30    With regard to Luna's statements that the traffic light was green when Sister entered the intersection, we conclude all of the necessary elements are met. Luna acknowledges that the statements were made under oath at a deposition in the course of the judicial proceeding at issue, and does not dispute that the statements concern an almost archetypal matter of fact (whether the light was red or green) that is certainly within the realm of his personal knowledge. Luna argues, however, that his testimony was not sufficiently unequivocal, when taken as a whole,[1] to qualify as a judicial admission. On the facts presented here, we disagree.

---

1. Luna argues that his testimony must be "taken as a whole," but submitted only four pages of his deposition transcript into the record. We are thus unable to review Luna's testimony "as a whole"; our review is necessarily limited to the excerpts contained in the record. Litigants in similar situations—who may want to ask the court to consider deposition testimony "as a whole"—might find it best to err on the side of inclusiveness when attaching deposition excerpts (in four-pages-on-one-page format, if burdening the record is a concern) to summary judgment memoranda.

¶31    When asked about the color of the light, Luna was adamant that it was green for Sister. Indeed, Luna so testified seven different times over the course of his two depositions. At times, Luna even appeared annoyed by the multiple questions about the matter, twice stating: "I will repeat myself. It was green when we went through it." In the portions of the deposition transcript Luna provided, he never expressed the slightest doubt or equivocation about the color of the light. Moreover, Luna did not seek to correct or amend his deposition, nor did he ever file an affidavit seeking to explain away or contradict his testimony. Indeed, by his own admission, Luna's testimony on this point has remained remarkably consistent.

¶32    And giving conclusive effect to Luna's testimony regarding the color of the light is consistent with the public policies underlying judicial admissions—conserving judicial resources, preventing perjury, and advancing the quality of justice. Luna and Sister do not have a dispute about the color of the light: they each clearly swore, under oath, that it was green. It makes little sense to convene a jury to consider the matter.

¶33    The circumstances presented here constitute a clear example for application of the "judicial admission" rule. Luna testified clearly and unequivocally, under oath in a deposition, about a factual matter well within his personal knowledge. It would be unjust to relieve him of the consequences of this admission. Accordingly, the district court correctly determined that Luna's testimony on this point constituted a judicial admission, and correctly deemed the light "green" for the purposes of adjudicating the dispute between Luna and Sister.

2

¶34    We reach a different conclusion, however, with regard to Luna's deposition testimony about the manner in which Sister was operating her vehicle on the day in question.

Although that statement was offered under oath in a deposition in this judicial proceeding, it does not meet two of the other elements: the statement was not unequivocal, and—as construed and offered by Sister—it concerned a matter of opinion.

¶35 First, when asked if he had "any problems with the way [Sister] operated her vehicle on the day of the accident," Luna's answer was far from clear and unequivocal. His response was: "Well, no. To me, I mean, with all that's happened to me, and I'll tell you again, things have changed. So it was one thing before, and now it's different in terms of how I am." When asked to confirm that he "just said that [he] had no problems with the way [Sister] operated her vehicle on the day of the accident," Luna replied "Yes." Luna was not asked any specific follow-up questions about, for instance, whether Sister appeared distracted, whether she was speeding, or any other particular fact about her driving that day.

¶36 In our view, the question posed was not particularly clear. Whether a person has "any problems" with the way someone else is operating a vehicle is a question open to various interpretations. It is not at all clear, from context, whether Luna even understood this question to be asking about potential negligent actions Sister might have taken; this lack of clarity is only heightened by the fact that Luna was testifying through a Spanish-language interpreter. Luna first asked for the question to be repeated, perhaps indicating some confusion about what the question meant, then gave a rather rambling and (at least partially) non-responsive answer. The attorney asking the question tried to restate it, at which point Luna answered in the affirmative. In sum, this particular exchange between lawyer and witness does not leave us with any confidence that Luna was offering knowing testimony about the particulars of Sister's driving that day.

¶37    Second, if we construe the question as one asking for Luna's opinion about whether Sister was operating her vehicle in a negligent manner—the only context for which Sister offers it—Luna's answer would be in the nature of an opinion on an ultimate issue, rather than on a particular factual matter within his personal knowledge. Negligence, and the apportionment of negligence in a case where two or more parties may be at fault, are ultimate facts, *see, e.g., Acculog, Inc. v. Peterson*, 692 P.2d 728, 730 (Utah 1984) ("The ultimate facts in a comparative negligence case embrace only negligence, causation and the percentages of negligence attributed to plaintiff and defendant."), and these facts are usually best left to a factfinder. Had counsel asked specific follow-up questions about factual matters (was Sister speeding, did Sister appear to be watching the road, was Sister talking on her cellphone, and so on), Luna's answers would constitute factual testimony that might—if all the other factors were satisfied—constitute judicial admissions. But a party's ultimate opinion about whether the other side was negligent is not the sort of matter that will be considered a binding judicial admission.

II

¶38    Had we determined that both of Luna's statements were judicial admissions, it would have followed therefrom that summary judgment in favor of Sister is appropriate. But given our ruling that only Luna's statements about the color of the traffic light constitute judicial admissions, we must proceed to the next step: whether it is possible for Luna's case to survive Sister's motion for summary judgment when (a) his statement about Sister's driving is merely an ordinary admission, but (b) it is deemed a conclusive fact that Sister did not run a red light.

¶39    Luna correctly points out that, even if his statement that the light was green is considered conclusive, and the factfinder must therefore find that the light was green, that fact alone does

not inexorably exonerate Sister from negligence. In certain instances, drivers proceeding through a green light may still be considered to have acted negligently. *See, e.g.*, *Keller v. Martinez*, 2014 UT App 2, ¶ 11, 318 P.3d 1147 ("[A] green arrow never permits a driver to proceed carelessly, oblivious to the conditions at hand; the driver must take reasonable precautions to avoid a collision."); *see also* Model Utah Jury Instructions 2d CV 614 (Utah Judicial Council 2014) (stating that even "the driver with the green light has a duty to use reasonable care to avoid a collision").

¶40 Sister acknowledges this point, but argues that the district court's summary judgment ruling should nevertheless be affirmed due to a lack of competent evidence from any source that would indicate that Sister was driving in a negligent manner. As the plaintiff in a negligence action, Luna bore the burden of proof at trial. *See Asael Farr & Sons Co. v. Truck Ins. Exch.*, 2008 UT App 315, ¶ 12, 193 P.3d 650 ("On issues essential to the cause of action for negligence, the plaintiff, in general, has the burden of proof." (quotation simplified)). When Sister moved for summary judgment, she "had the initial burden to show through reference to the pleadings, depositions, answers to interrogatories, and admissions on file that there was no genuine issue of material fact concerning [Luna's] claim." *See Jones v. Mackey Price Thompson & Ostler*, 2015 UT 60, ¶ 28, 355 P.3d 1000 (quotation simplified). Sister met this burden by showing that she and Luna agreed about the facts that led to the accident, that no other fact witness could offer any evidence that Sister was driving negligently, and pointing out that Luna "failed to identify any accident reconstructionist or expert witness to opine" about the cause of the accident or Sister's driving.

¶41 Once Sister met her initial burden, the burden shifted to Luna, "who may not rest upon the mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* ¶ 29 (quotation simplified). In

opposition to Sister's motion, Luna pointed only to the conflicting testimony of Driver about the color of the light. Luna offered no other evidence to show Sister's negligence. Instead, he offered "mere allegations," not "specific facts showing that there is a genuine issue for trial." *Id.* In fact, Luna alleges no specific action by Sister that could lead a jury to find her at fault. In both his complaint and his opposition to Sister's motion for summary judgment, Luna's allegations of Sister's negligence—save running a red light—merely recite provisions from Utah's model jury instructions. A plaintiff who "merely state[s] elements of the claimed causes of action and allege[s] in vague and conclusory terms" that defendant committed acts amounting to tortious conduct is not entitled to survive summary judgment. *See Rusk v. University of Utah Healthcare Risk Mgmt.*, 2016 UT App 243, ¶ 7, 391 P.3d 325 (per curiam).

¶42 Because Luna's deposition testimony about Sister's driving is not deemed conclusive, Luna was entitled to the opportunity to present other evidence that might tend to show that—even though she had a green light—Sister was nevertheless driving in a negligent manner. Luna did not take advantage of this opportunity. He produced no evidence—other than Driver's testimony that he had the green light, which testimony is of no use to Luna—that Sister was operating her vehicle in a negligent manner. For this reason, we affirm the district court's grant of summary judgment in favor of Sister on the merits of Luna's claim.[2]

---

2. The district court based its grant of summary judgment on its determination that both categories of Luna's statements—including his statement that he had no complaints about Sister's driving on the day of the accident—were judicial admissions. Although we reach a different conclusion than the district court did about the binding effect of the second category of

(continued…)

III

¶43    Lastly, Luna argues that Sister should be required to pay the fee apparently charged by his treating physicians for the time they spent sitting for depositions taken by Sister. Luna grounds his argument in the text of rule 26(a)(4)(B) of the Utah Rules of Civil Procedure, which states that "the party taking the deposition shall pay the expert's reasonable hourly fees for attendance at the deposition." Sister accuses Luna of taking the language of that provision out of context, because she reads that particular subsection as being concerned only with *retained* experts, and the depositions in question here were of *non-retained* experts. Sister points out that the applicable section of the rule dealing with non-retained experts contains no similar provision about allocation of costs, *see* Utah R. Civ. P. 26(a)(4)(E), and asserts that, in this situation, the rule does not require either party to pay a professional witness fee to non-retained experts, and that therefore the allocation of any such costs is a matter left to the discretion of the district court. We think Sister has the better of this argument.

¶44    Rule 26(a)(4) begins, in subsection (A), with a discussion of the disclosure requirements for witnesses who are "retained or specially employed to provide expert testimony." *Id.* R. 26(a)(4)(A). Specifically, with regard to those witnesses, parties

---

(…continued)

statements, "we can affirm summary judgment on any ground or theory apparent on the record, regardless of whether it was identified by the district court as the basis of its ruling." *Gardiner v. Anderson*, 2018 UT App 167, ¶ 16, 436 P.3d 237. In our view, it is apparent from the record that Luna has no evidence of Sister's negligence other than Driver's testimony about the color of the light, and that Sister is entitled to summary judgment on this alternative ground.

must provide a disclosure that includes, among other things, the expert's "qualifications, including a list of all publications authored within the preceding 10 years" and "a list of any other cases in which the expert has testified . . . within the preceding four years," as well as "all data and other information that will be relied upon by the witness in forming" her opinions. *Id.* Immediately following this list of specific requirements for disclosure of retained experts, subsection (B) appears, and reads, in its entirety, as follows:

> Further discovery may be obtained from an expert witness either by deposition or by written report. A deposition shall not exceed four hours and *the party taking the deposition shall pay the expert's reasonable hourly fees for attendance at the deposition*. A report shall be signed by the expert and shall contain a complete statement of all opinions the expert will offer at trial and the basis and reasons for them. Such an expert may not testify in a party's case-in-chief concerning any matter not fairly disclosed in the report. The party offering the expert shall pay the costs for the report.

*Id.* R. 26(a)(4)(B) (emphasis added). Luna focuses solely on the emphasized language, while Sister asks us to consider the provision as a whole, and in context. When viewed in context, we think it evident that subsection (B)—as opposed to subsection (E)—covers only *retained* experts.

¶45 It is clear that subsection (A) deals only with retained experts. The specific disclosure requirements found there differ markedly from the less-stringent disclosure requirements found in subsection (E), the subsection regarding non-retained experts, with regard to whom parties need only disclose "a written summary of the facts and opinions to which the witness is expected to testify." *Id.* R. 26(a)(4)(E). The first words of

subsection (B)—"[f]urther discovery"—are a clear reference to subsection (A), and indicate that a party may obtain more information, in addition to that already disclosed, regarding a retained expert in one of two ways: "by deposition or by written report." *Id.* R. 26(a)(4)(B). This provision cannot possibly be referring to non-retained experts, because the rule does not contemplate reports from non-retained experts. *See id.* R. 26 advisory committee notes (stating that, "because a party who expects to offer . . . testimony [from non-retained experts] normally cannot compel such a witness to prepare a written report, further discovery must be done by interview or by deposition"); *see also Drew v. Lee*, 2011 UT 15, ¶ 18, 250 P.3d 48 (stating that "written reports are required only of retained or specially employed experts" (quotation simplified)). Moreover, the entire "report or deposition" choice that is the subject of subsection (B) is one that the rule contemplates will be made only with regard to retained experts. And finally, there is language in subsection (B) that, if it applied to non-retained experts, would render similar language in subsection (E) superfluous. *Compare* Utah R. Civ. P. 26(a)(4)(B) (stating that "[a] deposition shall not exceed four hours"), *with id.* R. 26(a)(4)(E) (stating that "[a] deposition of such a witness may not exceed four hours"). Thus, the language in rule 26(a)(4)(B) applies only to discovery from *retained* experts, and therefore does not assist Luna here, because the depositions Sister took were of Luna's *non-retained* experts.

¶46    The rule that does apply here is the subsection dealing with non-retained experts. *See* Utah R. Civ. P. 26(a)(4)(E). But, as noted, that subsection does not contain any provision assigning responsibility for payment of any hourly fee the non-retained expert might charge for her time during a deposition.[3] Thus,

---

3. Not only does this rule differ from the Utah rule regarding retained experts, *see* Utah R. Civ. P. 26(a)(4)(B), but it also differs

(continued…)

nothing in any applicable rule requires Sister to pay the hourly fee of any non-retained expert witness that she deposes, and nothing in any applicable rule requires the district court to allocate those fees or related costs to any particular party in any particular way.[4]

¶47   Luna argues—and Sister does not dispute—that there exists a "custom" among lawyers in Utah that the party requesting a deposition pay the court reporter's fee for the original deposition transcript, and analogizes that the same rule should hold true for hourly fees charged by non-retained experts. *See Caldwell v. Wheeler*, 89 F.R.D. 145, 147 (D. Utah 1981) (citing a study indicating that, "[p]rior to 1970, . . . the overwhelming custom among lawyers was that the instigating party paid for the original deposition" transcript); *see also Kirkham v. Societe Air France*, 236 F.R.D. 9, 12 (D.D.C. 2006) (stating that "professional standards in some areas may permit treating physicians to be compensated for time spent as a witness or at a deposition"). But in the posture of this case, questions about the existence of any such "custom" are academic

---

(…continued)
from the applicable federal rule, *see* Fed. R. Civ. P. 26(b)(4)(E) (stating that "unless manifest injustice would result, the court must require that the party seeking discovery: (i) pay the expert a reasonable fee for time spent in responding to discovery under" the rule providing for depositions of experts).

4. The Utah Rules of Civil Procedure require parties to pay subpoenaed witnesses "the fees for one day's attendance and the mileage allowed by law," Utah R. Civ. P. 45(b)(2), which Sister did in this case. These fees are nominal and calculated on a per diem basis, *see* Utah Code Ann. § 78B-1-119 (LexisNexis 2018), whereas a professional witness's fee is usually calculated by the hour and may constitute a more significant amount of money.

because, even if it were the custom in Utah that the party requesting the deposition of a non-retained expert should pay any costs or fees associated with that deposition, such a custom would not serve to create a mandatory obligation in the absence of a rule so stating, and could conceivably be varied in appropriate cases.[5]

¶48    In a situation like this, where no rule mandates the allocation of these fees in any particular way, we default to the general rule that "[district] courts have broad discretion in matters of discovery." *Daniels v. Gamma West Brachytherapy, LLC*, 2009 UT 66, ¶ 54, 221 P.3d 256 (quotation simplified). While district courts could conceivably take asserted "custom" into account when assessing discovery disputes like this one, there is no indication on this record that the district court abused its discretion in reaching its decision to deny Luna's statement of discovery issues. We disagree with Luna that any provision of rule 26 mandates the opposite result, and Luna has not met his burden of demonstrating that the district court otherwise committed an abuse of discretion.


CONCLUSION

¶49    We conclude that the district court properly treated Luna's deposition testimony about the color of the traffic light as a binding judicial admission. However, the district court erred when it treated Luna's equivocal testimony regarding his opinion of Sister's driving that day as a judicial admission. Nevertheless, we affirm the district court's ultimate grant of summary judgment on the merits of this case, because Luna presented the district court with no evidence of Sister's

---

5. To the extent that the text of the rules does not match local custom, that is a matter the parties can bring to the attention of the committee tasked with drafting and amending the rules.

negligence, other than Driver's testimony about the color of the light. Finally, we discern no abuse of discretion in the district court's discovery order.

¶50   Affirmed.

———————