Carl **BALDWIN** and Larry Gleim, **Plaintiffs and Appellants,**

v.

**VANTAGE CORPORATION, a Utah corporation, Defendant and Respondent.**

No. 18202.

Supreme Court of Utah.

Jan. 18, 1984.

Ray M. Harding, Jr., Pleasant Grove, for plaintiffs and appellants.

Edward M. Garrett and Joseph E. Hatch, Salt Lake City, for defendant and respondent.

HOWE, Justice:

Plaintiffs Carl Baldwin and Larry Gleim, partners in the construction business, bring this appeal from an adverse judgment in a suit which they brought for the rescission of a contract and the restitution of all amounts they had paid under it. Defendant Vantage Corporation is a wholly-owned subsidiary of Deseret Federal Savings and Loan Association. Vantage was engaged in the development of Blackhawk Estates in Pleasant Grove, Utah. Doug Boulton was the project manager of Vantage and also a vice-president of Deseret Federal.

In the spring of 1978, plaintiffs met with Boulton and negotiated a contract to purchase seven lots in Plat C of the Blackhawk Estates from Vantage. No written contract was ever presented at trial; however, most of the terms of the sale were undisputed. Plaintiffs paid $8,950 as a 10% down payment on lot numbers 18, 19 and 28 (at $13,500 per lot) and on lot numbers 34, 35, 49 and 58 (at $12,500 per lot). The interest rate was 11% per annum for the first year after electrical power was made available to the lots and 13% per annum thereafter. No duration of the contract was set; however, it can be assumed that it was short-term given its high interest rate and considering Vantage's objectives for entering into the sale. In addition, Vantage agreed to subordinate its interest in the lots so that plaintiffs could secure construction financing, provided that such financing came from Deseret Federal. There was likewise no dispute that plaintiffs made interest payments of $4,278.59 and $2,990.32 and sold three of the seven undeveloped lots to third parties in 1979.

In the spring of 1980, plaintiffs sought a construction loan from Deseret Federal to build "spec homes" on two of the remaining four lots. Deseret Federal denied the request for a loan pursuant to its policy, then in force, to lend no money for building speculation; that is, building homes to put

on the market as opposed to building homes for particular buyers. When they could not obtain construction funds elsewhere, plaintiffs sought to rescind the contract to purchase the lots and to recover the amounts they had paid in principal and interest. Defendants counterclaimed to foreclose plaintiffs' interest in the four lots.

At trial, both plaintiffs testified that during the 1978 negotiations Boulton "guaranteed" that construction financing would be available from Deseret Federal when they were ready to build. Boulton, who admitted that only he and the plaintiffs were present, could not remember making any guarantee. He stated further that he neither had authority to bind Deseret Federal to grant a loan in the future nor to process real property loans. In addition, there was evidence that guaranteeing the availability of future loans was not a normal practice of officers of either Vantage or Deseret Federal.

The trial court found that plaintiffs failed to prove that defendant's agent Boulton made a guarantee as to the availability of construction financing. It then concluded that the statute of frauds, U.C.A., 1953, § 25–5–1, could not be used by the plaintiffs as a basis for rescission because there was either sufficient memoranda or part performance to take the contract out of the statute. Rescission was denied plaintiffs and foreclosure was granted to the defendant.

■■■ Plaintiffs first contend that the trial court erred in finding that no guarantee existed because defendant had admitted the guarantee in its answer to the plaintiffs' complaint. Therefore, plaintiffs argue, the existence of the guarantee should stand as a stipulated fact. An admission of fact in a pleading is a judicial admission and is normally conclusive on the party making it. *Yates v. Large*, 284 Or. 217, 585 P.2d 697 (1978). See also *Paul Schoonover, Inc. v. Ram Construction, Inc.*, 129 Ariz. 204, 630 P.2d 27 (1981). However, this rule is not absolute. The trial court may relieve a party from the consequences of a judicial admission. See 9 Wigmore on Evidence (1981), § 2590. See also McCormick on Evidence, 2nd Ed. 1972, § 265. In the instant case, the defendant admitted the guarantee in answering the plaintiffs' first cause of action. However, in answering the plaintiffs' fourth cause of action, which was based on fraud, the defendant denied that it had represented that it would guarantee financing. Thus the defendant's answer was contradictory. Further, subsequent to the filing of the defendant's answer, the plaintiffs propounded interrogatories to the defendant, one of which inquired whether the defendant ever stated that it would guarantee construction loans on the lots. Defendant answered this interrogatory with an unequivocal "No." At the pretrial hearing, counsel for the defendant stated that his client had made no promise to make construction loans. Counsel for the plaintiffs made no response to that statement, but indicated that "it will be a factual issue." At the trial, both parties presented testimony regarding the guarantee as though it had not been admitted in the pleadings. It was clear that the resolution of this issue would weigh heavily in determining the outcome of the case. Defendant tried to establish that Boulton did not make the guarantee and that such procedure was uncommon among its personnel. Plaintiffs, with equal vigor, adduced testimony both to establish the guarantee's existence and to show its importance in their determination to make the purchase. It was not until counsel for the plaintiffs was making his final argument to the judge after the close of the evidence that he pointed out the admission in the defendant's answer. Under these facts it is clear that while defendant may have negligently admitted its existence in answering the complaint, the conduct of both parties throughout the remainder of the proceeding showed that this question was a material issue for the judge to determine. Plaintiffs did not rely on the admission nor were they misled by it. There is authority that an admission may be waived where the parties treat the admitted fact as an issue. *In Re Withing-*

ton's Estate, 99 Cal.App. 617, 279 P. 196 (1929); 71 C.J.S. § 161, pg. 335. Therefore, we decline to interfere with the trial court's discretion in not holding defendant to its admission in its answer.

Plaintiffs further contend that the trial court abused its discretion by arbitrarily finding that no guarantee had been made; that the uncontradicted testimony of the plaintiffs established its making, and Boulton did not testify that he did not make a guarantee but only that he "could not remember" making a guarantee. Plaintiffs rely upon *McClellan v. David*, 84 Nev. 283, 439 P.2d 673 (1968), where the Nevada Supreme Court found an abuse of discretion by the trial court in setting aside a default judgment. There, a secretary in the office of the plaintiff's attorney testified with exactness that she had conversed three times with the defendant by telephone soon after he had been served with summons about the necessity of his filing an answer to the complaint. Her recollection of the conversations was refreshed from written notes made by her at the time. The defendant did not deny the conversations, but simply testified that he did not recall them. The trial court relieved the defendant of his default, but that ruling was reversed on appeal. After the court held that there was no fundamental conflict in the testimony requiring it to adhere to the trial court's finding in favor of the defendant, the court said:

> Testimony of a witness that he does not remember whether a certain event took place does not contradict positive testimony that such event or conversation took place. *Bender v. Roundup Mining Co.*, 138 Mont. 306, 356 P.2d 469, 471 (1960); *Tennent v. Leary*, 81 Ariz. 243, 304 P.2d 384, 387 (1956). See also: Comment Note—Comparative value of positive and negative testimony. 98 A.L.R. 161. Therefore, we hold that there was no credible evidence before the lower court to show that the neglect of [the defendant] was excusable under the circumstances.

We have no quarrel with the rule nor with its application to the facts of that case. However, in *Bender v. Roundup Mining Co.*, supra, one of the cases cited by the Nevada court in support of the rule, the court there recognized that even though a witness's testimony is not directly controverted by other verbal testimony, the credibility of the witness and the weight to be given his testimony are questions to be determined by the trial court. In the McClellan case, there was no doubt cast upon the credibility of the secretary's testimony since she had made written notes of her conversations with the defendant (which conversations the defendant could not remember). In the *Bender* case, however, the court upheld the trial court, which chose to disbelieve the testimony of an injured miner and his wife that the miner had reported an accident to an employee in the mining company's office. The employee testified that he had no recollection of any such report being made to him by the miner and that if he had made such a report he would have referred him to his foreman and that he had no recollection of doing that. Other factors which cast doubt upon the credibility of the miner's testimony were that he did not complain to his foreman or anyone else in the mine on the night the alleged accident happened; although he was absent from work for a brief period, neither the foreman's absentee report nor the miner's physician's report indicated that he had reported the suffering of any accidental injury. In view of these and other factors which reflected doubt on the plaintiff's testimony, the Montana court held that the Industrial Accident Board and the trial court were not compelled to believe the plaintiff's testimony that he had sustained an accident and had reported it to his employer as he claimed.

We likewise find in the instant case that the trial court was not compelled to believe the plaintiffs' testimony that Boulton extended to them a guarantee of construction financing even though Boulton was only able to testify that he could not remember making such a guarantee.

Defendant presented testimony that Boulton had no authority to make a guarantee of a loan, and guarantees were rarely made by officials of Deseret Federal or Vantage. Details of the loan, such as the maximum or minimum amounts, qualifications, interest rates, payback schedules or even the length of this loan, were not discussed. Under these circumstances the trial court may well have doubted the credibility of the plaintiffs' testimony. We believe that this case is controlled by the general rule that the testimony of witnesses is to be given such weight and credibility as the trier of fact may find reasonable under the circumstances. *Guinand v. Walton*, 25 Utah 2d, 253, 480 P.2d 137 (1971). Considering all the evidence in a light most favorable to the successful party and indulging in all reasonable inferences to be drawn therefrom in support of the judgment, we find no arbitrariness on the part of the trial court in rejecting the plaintiffs' testimony.

■ Plaintiffs further assert that one of their claims against the defendant was based on misrepresentation which they had the burden of proving only by a preponderance of the evidence. They complain that the trial court held them instead to proving all of the elements of a cause of action for fraud by clear and convincing evidence. Assuming for the purposes of this case that the plaintiffs are correct in their assumption that proof of misrepresentation and proof of fraud require different standards of proof, we find no error. The trial court in its findings of fact found that "plaintiffs did not sustain the burden of proof that any ... guarantee was made to them." The court did not there specify what degree of proof it was imposing on the plaintiffs. However, the court remarked from the bench at the conclusion of the trial that "it cannot find by a preponderance of the evidence the agreement to provide construction financing." We interpret this finding of fact and statement from the bench to mean that the court did not believe that any such representation was ever made by the defendant. Furthermore, both in a subsequent finding of fact and in other remarks from the bench, the trial court stated that clear and convincing proof was required to prove fraud and that the plaintiffs had failed to sustain that burden. Thus the record indicates that the trial court distinguished between the two standards of proof and held the plaintiffs only to the preponderance standard in their attempt to prove misrepresentation.

Since no guarantee of construction financing was found, the plaintiffs' performance on the contract was not conditional. Therefore, their failure to make payments as required by the contract constituted a breach. Plaintiffs contend, however, that because the contract was oral it came within the statute of frauds, U.C.A., 1953, § 25-5-1, and was unenforceable. Being unenforceable, the plaintiffs argue, they are entitled to rescind the contract and recover their payments made thereunder.

■ We need not here decide whether a buyer of real estate may use the statute of frauds to effect a rescission and recover his payments. Plaintiffs concede that would be an uncommon use of the statute since generally the statute is relied upon by a vendor to bar a purchaser from enforcing an oral contract. Assuming for the purposes of this case that a buyer has such a remedy, it clearly was not available to the plaintiffs in this case since there had been part performance of the contract, thereby removing it from the statute of frauds, § 25-5-8. Both parties admitted the existence of the contract and had no dispute over its material terms except for the guarantee. The plaintiffs had made a down payment and two interest payments and had fully paid for and received conveyances from the defendant to three of the seven lots. This part performance was sufficient to remove the contract from the statute of frauds under these circumstances where the existence of the contract was admitted. *Martin v. Scholl*, Utah, Case No. 17542, filed November 14, 1983. We find no merit in plaintiffs' assertion that there were really seven separate contracts for the purchase of the lots and any part performance

related only to the contracts on the three lots the plaintiffs paid for and for which they received conveyances. The trial court found against this contention, and we sustain that finding. See *Sears v. Riemersma,* Utah, 655 P.2d 1105 (1982).

Plaintiffs lastly complain that they had paid ten percent of the principal and two years' interest on the contract balance, and they will lose those amounts in the foreclosure by the defendant. They charge the defendant will thereby be unjustly enriched at their expense. We disagree. By foreclosure, the defendant cannot receive more than what the plaintiffs promised to pay in the contract, an amount not disputed by the plaintiffs. Any amount derived from the sale of the lots at foreclosure sale over and above the amount owing to the defendant was directed to be paid to the plaintiffs. In addition, plaintiffs were given six months to redeem the lots from the foreclosure sale. Under these circumstances there is no element of unjust enrichment present.

The judgment is affirmed. Costs are awarded to defendant.

HALL, C.J., and OAKS and DURHAM, JJ., concur.

STEWART, J., dissents.