*This opinion is subject to revision before final publication in the Pacific Reporter*

**2020 UT 63**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

LUIS LUNA,
*Petitioner,*

*v.*

MARIA LUNA,
*Respondent.*

No. 20190396
Heard May 21, 2020
Filed August 20, 2020

On Certiorari to the Court of Appeals

Third District, Salt Lake
The Honorable Judge James D. Gardner
No. 160903176

Attorneys:

Daniel F. Bertch, Salt Lake City, for petitioner

Joseph Joyce, Joel D. Taylor, South Jordan, for respondent

JUSTICE PEARCE authored the opinion of the Court,
in which JUSTICE HIMONAS and JUSTICE PETERSEN joined.

ASSOCIATE CHIEF JUSTICE LEE authored a dissenting opinion,
in which CHIEF JUSTICE DURRANT joined.

JUSTICE PEARCE, opinion of the Court:

### INTRODUCTION

¶1   Maria Luna and Antonio Arias were involved in a car accident in a Salt Lake City intersection. Luis Luna, a passenger in his sister Maria's car, was injured as a result. Luis sued Maria and Antonio. Maria moved for summary judgment based, in part, on Luis's testimony that Maria had entered the intersection on a green light. Luis sought to defeat summary judgment with Antonio's testimony that he had the green light. The district court refused to

allow Luis to create a genuine issue of material fact by introducing evidence that contradicted his own sworn deposition testimony. The district court reasoned that Luis's statement should be considered a judicial admission not capable of being rebutted by other evidence. The court of appeals agreed.

¶2 Under the approach the district court employed, and the court of appeals endorsed, if Luis testified the light was green, and Maria agreed, it was green. Even if Luis could offer traffic camera video showing that the light was red, and could buttress that video with the testimony of twenty-seven nuns on their way home from Mass attesting that the light was red, Luis could still not defeat summary judgment and let a trier of fact decide what color the light really was.

¶3 This is ultimately a policy question. Although we understand why the district court and court of appeals would credit policies of efficiency and the seeming unseemliness of allowing a party to contradict her own testimony, we conclude that the truth-finding function of the trial process deserves more weight than the lower courts ascribed to it. We reverse and remand.

## BACKGROUND[1]

¶4 We appreciate the court of appeals' recitation of the facts in its opinion. *See Luna v. Luna*, 2019 UT App 57, 442 P.3d 1155. We adopt many of those facts.

¶5 Maria was driving her brother, Luis, to work, when both she and Antonio entered an intersection and collided. *Id.* ¶ 2. As a result, Luis, who was sitting in the passenger's seat, was injured. *Id.* Assuming the fault lay with one of the drivers and not Salt Lake City's traffic system, Luis brought a negligence suit against Maria and Antonio. *Id.* Luis alleged either Maria or Antonio ran a red light and that both had acted negligently in not yielding. *Id.*

¶6 During discovery, Antonio stated that he had a green light, giving him the right of way at the intersection. *Id.* ¶ 6. Maria stated that she also had a green light. *Id.* ¶ 3. In two depositions, Maria's counsel asked Luis if he saw the color of the traffic light as he and

---

[1] "Under Utah Rule of Civil Procedure 56, we view any facts and any reasonable inferences 'in the light most favorable to the party opposing summary judgment.'" *Fire Ins. Exch. v. Oltmanns*, 2018 UT 10, ¶ 7, 416 P.3d 1148 (citation omitted).

Maria were entering the intersection. Luis responded, "[w]e had the right-of-way." As a follow up, Luis stated that he saw the color of the light as they entered the intersection and it was green. *Id.* When asked how far away he was from the intersection when he first noticed the color of the traffic light, Luis testified that he did not know, "it all happened suddenly" but the light was "green when [they] went through it."

¶7   Maria's counsel also asked Luis if he had "any problems with the way [Maria] operated her vehicle on the day of the accident." *Id.* ¶ 5. Luis responded, "No." *Id.* And when asked to confirm "that [he] had no problems with the way [Maria] operated her vehicle on the day of the accident," Luis responded, "Yes." *Id.*

¶8   Luis settled with Antonio, and Antonio was dismissed from the case. *Id.* ¶ 6. Maria moved for summary judgment arguing there was no longer a genuine issue as to any material fact because both she and Luis agreed that the light was green when Maria entered the intersection. *Id.* Luis wanted to defeat summary judgment with Antonio's testimony that the light was green when he entered the intersection—which would mean it was red when Maria entered. *Id.*

¶9   The district court requested supplemental briefing on whether Luis's deposition statements constituted judicial admissions. *Id.* ¶ 7. A judicial admission is an admission that a party cannot rebut with contrary evidence. *See Judicial Admission*, BLACK'S LAW DICTIONARY (11th ed. 2019). In contrast, an evidentiary admission can be rebutted. Luis acknowledged he had consistently testified the light was green but contended that a jury should have the opportunity to disregard his testimony in favor of Antonio's version of the story. *Luna*, 2019 UT App 57, ¶ 7. The district court determined Luis's statements were judicial admissions that he could not contradict. *Id.* It then granted summary judgment in favor of Maria. *Id.*

¶10 Luis appealed the district court's grant of summary judgment. *Id.* ¶ 9. The court of appeals affirmed the district court's decision and agreed Luis's statements about the color of the light constituted a judicial admission. *Id.* ¶¶ 22, 29.

¶11 The court of appeals acknowledged that whether a party's deposition statement could constitute a judicial admission presented an issue of first impression in Utah. *Id.* ¶¶ 15–16. It referenced two approaches other jurisdictions have employed to address this issue. *Id.* ¶ 16. One approach is to "treat the sworn testimony of a party like that of any other witness, allowing parties to contradict their own

statements with the testimony of other witnesses." *Id.* The other is to "consider a party's sworn deposition testimony to be binding on that party, provided that the statements are unequivocal and made about facts within the party's knowledge." *Id.*

¶12 The court of appeals preferred the second option for two reasons. *Id.* ¶¶ 17–19. First, it determined that having a trial when there was no dispute about a particular issue between litigants would waste judicial resources. *Id.* ¶¶ 17–18. Second, the court of appeals opined that categorizing deposition statements as judicial admissions would promote justice by both discouraging perjury and by holding litigants to their deposition testimony. *Id.* ¶ 19.

¶13 Citing those policy-based rationales, the court of appeals determined that "a party's sworn deposition statements, provided certain factors are present, can constitute binding judicial admissions." *Id.* ¶ 22. The court of appeals then established four criteria that a party would have to show before a court could categorize a party's testimony as a judicial admission: 1) "the statement is made under oath during the course of the judicial proceeding;" 2) "the statement is clear and unequivocal;" 3) "the statement is about a factual matter within the party's personal knowledge;" and 4) "giving binding effect to the statement would be consonant" with the underlying policies. *Id.* ¶ 28.

¶14 Applying this standard, the court of appeals analyzed Luis's statements that Maria had a green light and that he "had no problem" with the way Maria operated the vehicle. *Id.* ¶ 29. The court of appeals determined that the first statement qualified as a judicial admission, but the second did not. *Id.*

¶15 Luis petitioned for certiorari. He asks us to review whether the court of appeals erred in adopting the judicial admission doctrine.[2] We granted certiorari.

---

[2] We also granted certiorari on the question of "[w]hether the Court of Appeals erred in concluding Respondent was entitled to summary judgment on the issue of whether [Maria] negligently failed to take [']reasonable precautions' or 'reasonable care' to 'avoid a collision.'"

The judicial admission that the light was green for Maria formed the factual predicate for this argument; that is, Luis argued that summary judgment was inappropriate even if the district court found no genuine issue of material fact on the semaphore's color.

(continued . . .)

**ISSUE AND STANDARD OF REVIEW**

¶16  Luis asks us to consider whether the court of appeals erred in adopting a rule that a party's deposition statements may be treated as binding judicial admissions.

¶17  "'On a writ of certiorari, we review the decision of the court of appeals, not that of the district court, and apply the same standard[s] of review used by the court of appeals. We conduct that review for correctness, ceding no deference to the court of appeals.'" *State v. Wilder*, 2018 UT 17, ¶ 15, 420 P.3d 1064 (alteration in original) (citation omitted). And when reviewing a motion for summary judgment under Utah Rule of Civil Procedure 56, "we view any facts and any reasonable inferences 'in the light most favorable to the party opposing summary judgment.'" *Fire Ins. Exch. v. Oltmanns*, 2018 UT 10, ¶ 7, 416 P.3d 1148 (citation omitted).

¶18  Although a correctness standard of review requires us to determine whether the court of appeals erred, we note that "err" is something of a misnomer in this context. The question presented to us is one of pure policy and a classic example of this court being right by virtue of being last.

**ANALYSIS**

I. The Court of Appeals' Opinion

¶19  The court of appeals commenced its analysis by correctly stating that "a party's admission of fact in a pleading is normally treated as a conclusive admission that the party is not later permitted to contradict, even with evidence from other sources." *Luna v. Luna*, 2019 UT App 57, ¶ 15, 442 P.3d 1155; *see also Baldwin v. Vantage Corp.*, 676 P.2d 413, 415 (Utah 1984) ("An admission of fact in a pleading is a judicial admission and is normally conclusive on the party making it.").[3] The court of appeals then correctly noted that no Utah

_____

Because we determine the court of appeals erred in adopting the judicial admission doctrine in this circumstance and reverse the grant of summary judgment, we need not address this additional question.

[3] The key word in that phrase, however, is normally. We have noted that this is not an absolute rule and a trial court can relieve a party from the consequences of a judicial admission. *See Baldwin*, 676 P.2d at 415 (determining the defendant may have "negligently admitted" a fact in answering the complaint but the parties' conduct

(continued . . .)

appellate court has decided if a party can be "conclusively held" to the statements she makes in a deposition. *Luna*, 2019 UT App 57, ¶ 15.

¶20 The court of appeals examined two basic approaches other jurisdictions have used when considering the consequence of an admission made during a party's deposition. *Id.* ¶ 16. Some courts "treat the sworn testimony of a party like that of any other witness, allowing parties to contradict their own statements with the testimony of other witnesses." *Id.* Other jurisdictions "consider a party's sworn deposition testimony to be binding on that party, provided that the statements are unequivocal and made about facts within the party's knowledge." *Id.* The court of appeals determined that the second approach would be the "better rule" for two reasons. *Id.* ¶¶ 16–22.

¶21 First, it opined that this approach was a better use of judicial resources because it does not allow a case to go to trial when the parties do not disagree about the matter to be tried. *Id.* ¶ 17. The court of appeals stated that if the parties "do not actually have a dispute about a particular issue, there seems little point in bringing the power of the judicial system to bear to weigh in on the matter." *Id.* ¶ 18.

¶22 Second, the court of appeals cautioned that "there is something unjust about allowing a litigant to convene a trial so that a jury can determine if the facts are other than what the litigant swears they are." *Id.* ¶ 19. The court of appeals reasoned that this created an incentive to commit perjury. *Id.* It was also concerned that allowing this would "open the door for litigants to argue that they should recover despite their own sworn statements to the contrary." *Id.*

¶23 Based on these considerations, the court of appeals adopted the position that "a party's sworn deposition statements, provided certain factors are present, can constitute binding judicial admissions." *Id.* ¶ 22. The court outlined four factors: 1) whether the statement is made under oath during a judicial proceeding; 2) whether the statement is "clear and unequivocal;" 3) whether "the statement is about a factual matter within the party's personal knowledge;" and 4) whether considering the statement as a judicial

---

throughout the litigation "showed that this question was a material issue for the judge to determine").

admission would be consistent with the underlying policies. *Id.* ¶¶ 23–28.

¶24 The court of appeals applied these factors to two categories of statements Luis made during his deposition: 1) statements that the traffic light was green and 2) statements that he "had no problem with" how Maria operated the vehicle. *Id.* ¶¶ 29–37. It determined Luis's statement about the traffic light met all four requirements and was therefore a judicial admission. *Id.* ¶ 30. Notably, the court of appeals concluded that Luis's testimony was unequivocal and that he was "adamant" that the light was green. *Id.* ¶¶ 30–31. It noted that Luis never expressed "the slightest doubt or equivocation about the color of the light" and he did not try to correct or amend his deposition testimony. *Id.* ¶ 31.

¶25 But the court of appeals held that Luis's statement that he "had no problem" with Maria's driving did not qualify as a judicial admission. *Id.* ¶¶ 34–35. The court opined that Luis's statement was not unequivocal and that the questioning that solicited the response was unclear. *Id.* ¶ 36. Moreover, Luis's testimony concerned a matter of opinion and not about factual matters like if Maria was speeding, watching the road, or talking on her cellphone. *Id.* ¶ 37.

¶26 The court of appeals ultimately concluded that Luis's admission that Maria entered the intersection under a green light justified the district court's grant of summary judgment. *Id.* ¶ 42.[4]

---

[4] To be clear, the court of appeals recognized that a plaintiff might be able to show that a driver was negligent even when entering an intersection on a green light and analyzed whether Luis had forwarded sufficient evidence of Maria's negligence to survive a motion for summary judgment. *Luna*, 2019 UT App 57, ¶¶ 39–40. The court of appeals agreed with the district court that Luis had not and affirmed. *Id.* ¶ 42. As noted above, Luis petitioned for certiorari on this question as well, but we need not reach it in light of our conclusion that Luis can introduce evidence that contradicts his testimony.

## II. Judicial Admissions

¶27 A judicial admission is a "formal waiver of proof that relieves an opposing party from having to prove the admitted fact." *Judicial Admission*, BLACK'S LAW DICTIONARY (11th ed. 2019). It also "bars the party who made the admission from disputing it." *Id.* The effect of a judicial admission is that once it has been made, the party cannot present any evidence that contradicts that statement. *See, e.g.*, *Condas v. Condas*, 618 P.2d 491, 495–96 (Utah 1980); *see also Garland v. Fleischmann*, 831 P.2d 107, 111 (Utah 1992) ("When an admission is treated as a matter of pleading, excusing the pleader's opponent from offering evidence on the point admitted, the admission is necessarily conclusive as to the facts admitted. It precludes the pleader from denying obligations implied by law from such admitted facts."); *Bilesky v. Shopko Stores Operating Co., LLC*, 338 P.3d 76, 80 (Mont. 2014) ("The main characteristic of a judicial admission is the conclusive effect upon the party making the admission; no further evidence can be introduced by the party making the admission to prove, disprove, or contradict the admitted fact."). This doctrine is most often applied to an admission of fact in a pleading or a prior judicial proceeding, but even that is not an absolute rule. *See, e.g.*, *Baldwin v. Vantage Corp.*, 676 P.2d 413, 415 (Utah 1984).

¶28 The policy underlying the judicial admission doctrine provides that a party should not be able to plead or admit certain facts and then later present contradicting evidence. This limitation helps define the factual issues that are to be proved at trial. *See* 2 ROBERT P. MOSTELLER ET AL., MCCORMICK ON EVIDENCE § 257 (8th ed. 2020) (hereinafter MCCORMICK ON EVIDENCE). The courts look to the "pleadings as part of the record in passing on the relevancy of evidence and to determine the issues to be submitted to the jury. For these purposes, the pleadings . . . are used as judicial and not as evidentiary admissions, and they are conclusive until withdrawn or amended." *Id.* (footnotes omitted).

¶29 Until the court of appeals' decision in this matter, Utah law had not addressed whether, and to what extent, those policies should apply to a party's deposition testimony. Other states have, however. And commentators have employed a tripartite taxonomy to describe what those states have done. *See* MCCORMICK ON EVIDENCE § 258.

¶30 The first approach is to treat a party's testimony like that of any other witness. *Id.* This means that the party making the admission is free to introduce contradictory evidence. *Id.* For

instance, in *Guenther v. Armstrong Rubber Company*, 406 F.2d 1315 (3d Cir. 1969), a plaintiff testified that a "black wall" tire had exploded and injured him. *Id.* at 1316–17. However, the tire marked as a trial exhibit was a "white wall" tire. *Id.* at 1316. The district court granted the defendant's motion for directed verdict. *Id.* The Third Circuit determined "a party is regarded as not bound by his own testimony where there is contradictory evidence or circumstances which the trier of facts might fairly believe." *Id.* at 1318 (citation omitted). In this circumstance, a jury should determine whether the plaintiff's testimony merits belief. *Accord Kanopka v. Kanopka*, 154 A. 144, 146 (Conn. 1931) (determining plaintiff was not bound by her testimony); *Alamo v. Del Rosario*, 98 F.2d 328, 330–31 (D.C. Cir. 1938) (determining jury could believe other witnesses and plaintiff was not estopped by his own testimony); *Jerominski v. Fowler, Dick & Walker*, 93 A.2d 433, 435 (Penn. 1953) ("Where there is an obvious possibility that a plaintiff may be mistaken, as may any other witness, he is not concluded thereby notwithstanding other witnesses give a different version." (citation omitted) (internal quotation marks omitted)).

¶31 Second, some jurisdictions have determined that a party's testimony is "not conclusive against contradiction except when testifying unequivocally to matters" in her "peculiar knowledge." MCCORMICK ON EVIDENCE § 258. This may include testimony about subjective facts, like the party's own knowledge or motivation. *Id.* For example, a federal district court in New Mexico concluded that a supervisor's testimony regarding his motivation for terminating the plaintiff "was peculiarly within his knowledge, and no amount of testimony to the contrary by other witnesses could overcome his admission" about his decision to terminate the plaintiff. *Brillhart v. Phillips Elec. N. Am. Corp.*, 938 F. Supp 742, 746 (D.N.M. 1996). It determined that "[w]hen a party testifies to a fact peculiarly within his knowledge, the testimony is conclusive on that issue unless the statement is modified or explained by additional testimony of that party." *Id.* at 744. It further held that the testimony "is conclusive even if other witnesses contradict the party and testify to facts that would otherwise permit a verdict in the party's favor." *Id.*; *see also Monsanto Chem. Co. v. Payne*, 354 F.2d 965, 969 (5th Cir. 1966) (determining the plaintiff's testimony about his qualifications and details regarding his actions the day of the incident was sufficient to support a judgment notwithstanding the verdict); *Findlay v. Rubin Glass & Mirror Co.*, 213 N.E.2d 858, 861 (Mass. 1966) (concluding that since the plaintiff's testimony "concerns the extent of his own knowledge, the plaintiff is bound by it").

¶32 A third approach treats a party's disserving testimony as a judicial admission, conclusive on that issue, and the party cannot introduce any contradictory evidence. MCCORMICK ON EVIDENCE § 258. For example, the Mississippi Supreme Court has held that when a party "in full possession of his mental faculties" testifies about a material fact "as distinguished from an estimate or approximation," the testimony is binding on the party "unless he subsequently gives some reasonable explanation of the testimony as having been the result of mistake, lapse of memory, or misunderstanding." *Taylor v. Williams*, 190 So. 2d 872, 874 (Miss. 1966).

¶33 Commentators have noted that this third approach, "often comes with a number of qualifications and exceptions." MCCORMICK ON EVIDENCE § 258. For example, the Virginia Supreme Court detailed that a party's damaging "testimony must be considered in the light of an explanation of such statement made in a later part of his testimony." *Virginia Elec. & Power Co. v. Mabin*, 125 S.E.2d 145, 148 (Va. 1962). And it held that the admission "should be balanced against a clarification of the admission, offered when the litigant is on redirect examination." *Id.* But in the end, "it is generally for the jury to determine whether it will accept such explanation or clarification." *Id.*

¶34 Additionally, the rule may not apply when the party's testimony is "attributable to inadvertence," "misuse of language," is "uncertain" or "an estimate or opinion," or "relates to a matter" about "which the party could easily have been mistaken." MCCORMICK ON EVIDENCE § 258.

¶35 As described above, the court of appeals appears to have elected a version of this third option. It did so reasoning that this option would promote judicial efficiency and avoid injustice. *Luna*, 2019 UT App 57, ¶¶ 16–22. While we credit the court of appeals' consideration of the policy concerns, we weigh the policies differently.

### III. A Party's Deposition Testimony Is Not a Judicial Admission

¶36 We agree with the commentators that the first approach is "preferable in policy and most in accord with the tradition of [a] jury trial." MCCORMICK ON EVIDENCE § 258; *see also Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) ("When a party testifying at trial or during a deposition admits a fact which is adverse to his

claim or defense, it is generally preferable to treat that testimony as solely an evidentiary admission.").

¶37  Commentators also note that

> a general rule of conclusiveness necessitates an elaboration of qualifications and exceptions, which represents an unfortunate transfer to the appellate court of some of the traditional control of the jury by the trial judge, or in a nonjury case of the judge's factfinding function. Also, the moral emphasis is wrong. In the early cases where the rule of conclusiveness first appeared, judges were outraged by apparent attempts by parties to play fast and loose with the court. However, this is far from being the typical situation of the party testifying to disserving facts. Instead of the unscrupulous party, it is either the one who can be pushed into an admission by the ingenuity or persistence of adverse counsel or the unusually candid or conscientious party willing to speak the truth regardless of its consequences who is penalized by the rule of conclusiveness.

MCCORMICK ON EVIDENCE § 258 (footnotes omitted).

¶38 We agree. There is benefit in eschewing a rule that would bar a party from introducing credible contradictory evidence. And we prefer permitting the finder of fact to assess the credibility of such evidence. *See id.*; *see also Guenther v. Armstrong Rubber Co.*, 406 F.2d 1315, 1317 (3d Cir. 1969) ("In other words, the law recognizes the fact that parties, as well as other witnesses, may honestly mistake the truth, and requires juries to find the facts by weighing all the testimony, whatever may be its source." (citation omitted)); *id.* ("[I]n other words, a party is regarded as not bound by his own testimony where there is contradictory evidence or circumstances which the trier of facts might fairly believe." (quoting *Jerominski v. Fowler, Dick & Walker*, 93 A.2d 433, 435 (Pa. 1953)). And in the case of a motion for summary judgment, the court should be allowed to assess the evidence before it, including anything contradicting a party's testimony, to see if there is a genuine issue of a material fact.

¶39 In other words, we believe that a party's deposition testimony is best categorized as an ordinary evidentiary admission that can be contradicted with other appropriate evidence.

¶40 We can understand why the court of appeals credited the policies favoring treating unequivocal testimony as a judicial

admission. The court of appeals noted that judicial resources are finite and that permitting "cases to proceed to trial when the two parties do not disagree about the matter to be tried is a poor use of our limited judicial resources." *Luna v. Luna*, 2019 UT App 57, ¶ 17, 442 P.3d 1155.

¶41 We part ways with the court of appeals in a couple of respects. First, it is not correct to say that the rule we adopt would permit cases to go to trial where the "parties do not disagree about the matter." *See id.* When a party seeks to contradict her deposition testimony with other credible evidence, she does not agree about the matter. We are, in essence, allowing a party to say, "I know what I said, but I understand that there is other evidence which shows that my recollection was incorrect." That party then disagrees about the matter, and if the additional evidence is sufficient to create a genuine issue of material fact, the question should go the trier of fact.

¶42 Although we agree with the court of appeals' second concern—that judicial resources should be preserved—we are not convinced that the rule it announced will prove superior at conserving them. To the contrary, we predict that the rule the court of appeals adopted would lead to increased litigation over whether the deposition statement actually qualifies as a judicial admission.[5] It does not take much imagination to anticipate the motion practice over whether "the statement is clear and unequivocal" and whether "giving binding effect to the statement would be consonant with the policies underlying the 'judicial admission' rule." *Id.* ¶¶ 23–28.[6]

---

[5] The dissent disagrees and claims our rule will lead to more litigation and increased costs or will just "kick the can down the road." *Infra* ¶ 72. Admittedly, both we and the dissent are attempting to predict litigation behavior with little besides our practical litigation experience to guide us. For the reasons expressed, we believe that the rule we adopt will lead to less ancillary motion practice and be a more fair and efficient use of resources. But we take comfort in the fact that if further experience reveals that we have misaligned the incentives, we can adjust them by amending our rules.

[6] Moreover, there exists a natural disincentive to try cases where the evidence that contradicts a party's own deposition testimony is weak. Placing that party on the stand will expose them to the type of

(continued . . .)

¶43 The court of appeals also was concerned "there is something unjust about allowing a litigant to convene a trial so that a jury can determine if the facts are other than what the litigant swears they are." *Id.* ¶ 19. We think the larger injustice would be to deny a party the opportunity to use credible evidence to let the trier of fact determine what actually occurred.

¶44 "[T]he processes of law have only one legitimate objective, to seek out the truth and to do justice." *State v. Kent*, 432 P.2d 64, 67 (Utah 1967). The court "is a place to determine the truth—the facts of a particular case, to review the law and act accordingly, all that justice may prevail." *Id.*; *see also Conagra, Inc. v. Nierenberg*, 7 P.3d 369, 379 (Mont. 2000) ("The truth of the case depends on a comparison of what all the witnesses say and all the circumstances indicate. A rule which binds a party to a particular statement uttered on the stand becomes an artificial rule. It is out of place in dealing with testimony." (citation omitted)).

¶45 To repeat the hypothetical we discussed in our introduction, we see no compelling policy reason to prevent someone who genuinely believes that the light was green, and testifies honestly about his belief, from introducing traffic camera footage and the testimony of twenty-seven nuns returning from Mass that demonstrate the light was red. Under the court of appeals' approach, we would be saying that, as a judicial system, we should pretend that the traffic camera video does not exist.[7] Although justice is oft

---

cross-examination that most of us dreamed of conducting but rarely did.

[7] The rule we adopt also acknowledges the reality that human memory is very slippery. By way of example, there are hundreds of people who believe that sometime in the 1990s, they watched a movie called "Shazaam" that starred the comedian Sinbad. *See* Amelia Tait, *The Movie that doesn't exist and the Redditors who think it does*, NEWSTATESMAN (Dec. 21, 2016), https://www. newstatesman.com/science-tech/internet/2016/12/ movie-doesn-t-exist-and-redditors-who-think-it-does. In this movie, Sinbad played a genie. *Id.* If placed under oath, these people would testify that they have a clear recollection of watching Sinbad in Shazaam. The problem with that is that Sinbad never made a movie called Shazaam and never starred in a movie in which he played a genie. *See* Dan Evon, *Did Sinbad Play a Genie in the 1990s Movie 'Shazaam'?*,

(continued . . .)

represented as blind, we see no reason why justice would require us to not see what we know to exist in this circumstance.

¶46 Finally, the court of appeals expressed concern that a party may be tempted to commit perjury. *Luna*, 2019 UT App 57, ¶ 19. The court of appeals' reasoning is not immediately apparent. It would seem that the incentive to commit perjury is stronger where a party cannot, under any circumstances, relieve themselves from the consequence of honest but case-damaging testimony. If a party is concerned about how her testimony may be used to prevent the introduction of other evidence, she may be inclined to testify in a less than truthful manner. A better rule is one that incentivizes a party to testify to the facts as she remembers and any discrepancies or issues as to a material fact can be sorted by the factfinder. This better comports with our desire of "ascertaining the truth and securing a just determination" in every proceeding. UTAH R. EVID. 102.[8]

¶47 The dissent adds another reason to prefer the court of appeals' approach. It finds "no meaningful distinction between an unequivocal admission in a deposition and an unequivocal admission in a pleading or response to a request for admission." *Infra* ¶ 61; *see also infra* ¶ 62 n.17. We disagree.

---

SNOPES (Dec. 28, 2016), https://www.snopes.com/fact-check/sinbad-movie-shazaam/. That does not prevent these people from having very specific memories about the movie and its plot. To some of them, their memories of the non-existent movie are so vivid that they can only be explained by a theory that those who remember the movie travelled from a parallel dimension where Sinbad actually starred in Shazaam. *See* Vikram Murthi, *Sinbad's 'Shazaam': Inside the Internet's Conspiracy Theory About a Non-Existent Movie*, INDIEWIRE (Dec. 23, 2016), https://www.indiewire.com/2016/12/sinbad-shazaam-internet-conspiracy-theory-film-reddit-mandela-effect-1201762425/.

[8] Maria argues that a party's disserving testimony can qualify as a judicial admission when it is a deliberate, clear, unequivocal statement about a concrete fact within the party's knowledge. Maria briefly cites to other jurisdictions that have adopted such a rule. *See, e.g.*, *Caponi v. Larry's 66*, 601 N.E.2d 1347 (Ill. App. Ct. 1992). But Maria does not appear to argue any policy reasons different from those the court of appeals articulated for why we should adopt a similar rule.

¶48 Our Rules of Civil Procedure provide parties with a number of discovery tools that serve different purposes and trigger different consequences. Requests for admission are specifically designed to narrow the issues for trial. We provide parties with twenty-eight days to respond, at times with the benefit of counsel's input. UTAH R. CIV. P. 36.(a). Parties are alerted that "[a]ny matter admitted under this rule is conclusively established." *See* UTAH R. CIV. P. 36(c).[9] The rules governing depositions do not contain a similar warning. *See* UTAH R. CIV. P. 30.

¶49 We agree with the California Court of Appeals that

> [t]here is a vast difference between written discovery admissions, which are a studied response, made under sanctions against easy denials, that occur under the direction and supervision of counsel, who has full professional realization of their significance. . . and glib, easily misunderstood answers given by a lay opponent in a deposition.

*Scalf v. D.B. Log Homes, Inc.*, 27 Cal.Rptr.3d 826, 833 (Cal. Ct. App. 2005) (citation omitted) (internal quotation marks omitted) (holding that the plaintiff's deposition testimony was not the equivalent of a judicial admission).

¶50 Moreover, the distinction the dissent wants to draw may depend on the way the request for admission is phrased. To return to our now-favorite hypothetical, if the plaintiff in that case received a request for admission asking her to admit that the light was green, she may honestly deny the request and support that denial with the traffic camera video and the nuns' testimonies. And that denial results in no conclusively established fact.

---

[9] We draw a similar line with respect to responses in pleadings; that is, they are "normally conclusive" on the party making them. *See Baldwin v. Vantage Corp.*, 676 P.2d 413, 415 (Utah 1984). Utah Rule of Civil Procedure 8(d) advises parties that statements "in a pleading to which a responsive pleading is required, other than statements of the amount of damage, are admitted if not denied in the responsive pleading." It stands to reason that the consequences of an admission in a written pleading would differ from those made in a deposition. Litigants have weeks to prepare their written responses, free from the pressures a deposition imposes on a witness, and often with counsel drafting them.

¶51 If, however, the plaintiff is requested to admit that she perceived the light to be green, the honest answer would require an admission. But the conclusively established fact would be that she perceived the light to be green, not that the light was, in fact, green. This might prevent her from changing her testimony to say that she perceived the light was red, but it would not preclude her from introducing the other evidence about the light's color in opposition to a motion for summary judgment.

¶52 The dissent says that the answer to this problem is to permit the deponent to change her deposition testimony to say that she is aware of other evidence of the light's color. That remedy elevates form over substance. The facts of this case demonstrate how. Counsel asked Luis, "Did you see the color of the light as you were entering the intersection?" Luis responded, "Yes. It was green." The dissent would instruct Luis to, within the twenty-eight days that rule 30(e) permits, amend his answer to, "Yes, but Antonio says it was red. So I guess it might have been red."[10] And the dissent would allow Luis to use that amended deposition testimony in opposition to a motion for summary judgment. But the dissent would not permit Luis to attempt to defeat summary judgment by advancing Antonio's testimony directly. There is no practical reason to draw that distinction.

¶53 A better rule is one that recognizes the realities of litigation practice. In the words of the Southern District of New York, "[a]s a practical matter, a party-deponent cannot reasonably be held to the same precision of expression, breadth of knowledge, or legal expertise as a party responding through counsel to a written interrogatory." *Guadagno v. Wallack Ader Levithan Assocs.*, 950 F. Supp. 1258, 1261 (S.D.N.Y. 1997). Depositions can become emotionally charged and high-pressure affairs. Deponents are often asked, under intense and adversarial questioning, to recall the smallest details from events that occurred years before. As commentators have recognized, the parties most likely to bear the brunt of a rule of conclusiveness are not those that are trying to play games with the system, but those "who can be pushed into an admission by the ingenuity or persistence of adverse counsel" and

---

[10] This assumes, of course, that Luis learns of Antonio's testimony before the twenty-eight days to amend his deposition responses expire. *See* UTAH R. CIV. P. 30(e).

"the unusually candid or conscientious party willing to speak the truth regardless of its consequences." McCORMICK ON EVIDENCE § 258 (footnotes omitted).[11] We understand those realities and prefer to treat deposition testimony as giving rise to an evidentiary, rather than a judicial, admission.

**CONCLUSION**

¶54 A party's deposition testimony is like any other evidentiary admission and can be contradicted with other credible evidence. We reverse the court of appeals' adoption of the judicial admission doctrine as applied to a party's deposition testimony, reverse the grant of summary judgment, and remand to the district court.

---

[11] The dissent opines that these concerns are not implicated in this case because Luis did not "make a random slip in response to the sharp ingenuity of a crafty lawyer." *Infra* ¶ 65. Of course, the rule the dissent prefers would apply not just to this set of facts, but to all instances in which a party claims that an opponent's deposition testimony was sufficiently definitive to give rise to a judicial admission.

The dissent also suggests this case highlights the need to allow deposition testimony to create judicial admissions because Luis testified about the light's color a number of times during his deposition and never wavered in his recollection that the light was green. But the frequency of Luis's responses simply underscores the importance of a rule that does not require a deponent to conduct an after-the-fact rewrite of his deposition to insert ambiguity into every answer in order to attempt to use other competent evidence to defeat summary judgment. To blend the facts of this case with our hypothetical, if Luis were to discover traffic camera video that showed that his recollection was incorrect, the dissent's rule would require Luis to comb back through his deposition testimony to amend each of the answers in which he mentioned the light's color. This type of requirement would ultimately lead to more game playing in depositions, more mischief with deposition transcripts, and increased litigation over whether the testimony was sufficiently definitive to qualify as an admission. A better rule is one that allows the party to introduce evidence that contradicts her deposition testimony, and, if that evidence is strong enough to create a genuine issue of material fact, to be cross-examined with her deposition testimony at trial.

ASSOCIATE CHIEF JUSTICE LEE, dissenting:

¶55 Today we are asked to decide whether a party is bound at trial by an unequivocal admission of fact made before trial. To a large extent our law has already answered this question. Where the pretrial admission is made in a pleading or in written discovery, Utah law clearly prevents a party from contradicting the admission at trial. This is a central tenet of our rules of procedure, which establish a pretrial process for identifying disputed questions of fact that proceed to trial. If a party makes an admission of fact in a pleading[12] or response to a request for admission,[13] the admission is binding. It is a "judicial admission" that the party is barred from contradicting at trial—whether through the party's own testimony or other evidence.

¶56 This is settled doctrine deeply embedded in our law of civil procedure. It follows from the central function of a court—to resolve disputes between parties. *See In re Gestational Agreement*, 2019 UT 40, ¶ 12, 449 P.3d 69 (explaining that a court's power has "traditionally been limited to the adjudication of disputes"); *Univ. of Utah v. Indus. Comm'n of Utah*, 229 P. 1103, 1104 (Utah 1924) (noting that courts "have no power to decide abstract questions" or to render judgments "in the absence of an actual controversy"). If there is no dispute of fact after the pretrial winnowing process runs its course,[14] our law forecloses the need for further proceedings.

---

[12] *See Baldwin v. Vantage Corp.*, 676 P.2d 413, 415 (Utah 1984) ("An admission of fact in a pleading is a judicial admission and is normally conclusive on the party making it.").

[13] *See* UTAH R. CIV. P. 36(c) (responses to requests for admission are "conclusively established"); *Smith v. Batchelor*, 832 P.2d 467, 468 (Utah 1992) ("We will consider admissions as undisputed fact even when they apparently contradict other evidence in the record."). The majority notes that the effect of an admission will depend on how the request for admission is framed. *See supra* ¶¶ 50–51. True enough. But that also goes for questions posed in depositions. *See infra* ¶ 62 n.17. And the parallelism reinforces the problem with the majority's rule.

[14] The majority claims that there is a dispute in this case. It says "it is not correct to say that . . . the 'parties do not disagree'" where "a party seeks to contradict her deposition testimony with other credible evidence[.]" *Supra* ¶ 41. But this misframes the question.

(continued . . .)

¶57 The case before us today entails a small wrinkle on this settled question—whether to extend our established rule to unequivocal admissions made in a different form within the pretrial winnowing process: testimony given in a deposition. I see no reason to depart from our established law on this minor extension. I would treat a party's unequivocal statement in a deposition the same way we treat a party's other unequivocal statements prior to trial. I would treat it as a judicial admission—subject to the party's right to retract, qualify, or explain away the statement in a manner rendering it no longer "unequivocal."

¶58 The court of appeals adeptly identified the principal grounds for this holding: (1) "allowing cases to proceed to trial when the two parties do not disagree about the matter to be tried is a poor use of our limited judicial resources," given that the "main function of the judicial system in our society is to act as a forum for the fair and impartial resolution of bona fide disputes between parties," *Luna v. Luna*, 2019 UT App 57, ¶ 17, 442 P.3d 1155; and (2)"there is something unjust about allowing a litigant to convene a trial so that a jury can determine if the facts are other than what the litigant swears they are," allowing a party to "make out a better case for himself than he himself has testified to where his case involves facts within his own knowledge," *id.* ¶ 19 (citation omitted). As the court of appeals further observed, our system generally allows parties to "plead in the alternative." *Id.* ¶ 20. But once a case goes to trial, "the need for alternative pleading is eliminated." *Id.* And our established pretrial mechanisms determine the scope of the trial—issues on which the parties agree are off the table.[15]

---

Our pretrial rules tell the parties *how* they can establish a disagreement for disposition at trial. And under those rules the plaintiff in this case did not disagree with the defendant on the dispositive issue for trial. So under our pretrial rules, there is no operative disagreement.

[15] The court of appeals also identified a further policy concern—avoiding an incentive for subornation of perjury. *See Luna*, 2019 UT App 57, ¶ 19 (noting the concern that a party could have the incentive to advance testimony that is "regarded as false" in light of the party's own testimony) (citation omitted)). The majority turns this point the other way, suggesting that its rule better "incentivizes a party to testify to the facts as she remembers," while letting "any discrepancies or issues as to a material fact . . . be sorted by the

(continued . . .)

¶59 We could, of course, treat oral deposition testimony differently. We could hold—as some courts have, and the majority does today—that deposition testimony differs from written admissions because it may consist of only "glib, easily misunderstood answers." *Scalf v. D.B. Log Homes, Inc.*, 27 Cal. Rptr. 3d 826, 833 (Cal. Ct. App. 2005). But that distinction is insufficient. It ignores both a core element of the standard for judicial admissions (that the statement be "unequivocal"), and the escape valve built into that standard (allowing the party to qualify or retract an otherwise unequivocal statement).

¶60 The majority's standard, moreover, will create perverse incentives and compound the cost of discovery. Under the majority's holding, a party who locks an opponent into an unequivocal admission in a deposition will just follow that up with a request for admission. And the written response to that request will function as the bar sought by the defendant in this case (and upheld by both the district court and court of appeals).

¶61 I see no good reason to require the expense and delay of this additional formality. I see no meaningful distinction between an unequivocal admission in a deposition and an unequivocal admission in a pleading or response to a request for admission. I would apply the same standard to both forms of admissions. And I would avoid the problems the majority warns of by both limiting the rule to *unequivocal* statements and by preserving the escape valve that allows a party to qualify or retract an admission if and when there is a basis for doing so.[16]

---

factfinder." *Supra* ¶ 46. I see this as a wash. Both approaches can create dilemmas for a party—and incentives to bend the truth. But the law on this point is already established. We generally hold parties to their unequivocal statements made in the pretrial process. And we count on them to tell the truth, while leaving an escape valve that allows them to adjust their statements if plausible grounds for doing so come to light. *See infra* ¶ 61.

[16] *See Webster v. Sill*, 675 P.2d 1170, 1172–73 (Utah 1983) (allowing a party to "provide an explanation of [any] discrepancy" between a party's "clear position in a deposition" and subsequent "contradict[ion] [of that] deposition"); *Gaw v. Dep't of Transp.*, 798 P.2d 1130, 1141 (Utah Ct. App. 1990) (explaining that a party may

(continued . . .)

¶62 This approach adequately deals with the concerns expressed by the majority. I doubt there will be many cases where a plaintiff admits against his interest that a traffic light was green where a "traffic camera" or "twenty-seven nuns" suggest otherwise. *Supra* ¶ 2. And on the very rare occasion where such developments ensue, surely the plaintiff will be in a position to qualify his previously unequivocal statement—to note that he believed the light was green when he gave his deposition, but realizes now that he must have been mistaken.[17]

---

qualify or retract her deposition testimony if she has a "plausible" reason for doing so).

[17] As the majority notes, the precise "phras[ing]" of a question may dictate how unequivocal the plaintiff's admission will be. *Supra* ¶ 50. If a deponent is asked whether "the light was green," he might honestly give a denial in light of traffic camera video or the testimony of twenty-seven nuns. Or the deponent could change his answer if such evidence emerges later. The deponent might alternatively be asked whether he "perceived the light to be green." And if he says yes, that could leave the door open to contrary evidence.

I agree with the majority that the same is true of a request for admission. *Supra* ¶ 50. The plaintiff who saw a green light but knows about a traffic camera or twenty-seven nuns might "honestly deny" a request that he admit "that the light was green," *supra* ¶ 50, but be required to admit that he "perceived the light to be green," *supra* ¶ 51. And neither of those answers would preclude the plaintiff from presenting the traffic camera evidence or calling the nuns to testify.

There is thus no meaningful distinction between an admission made in response to a written request for admission and one made in deposition testimony. And we should hold that an unequivocal answer to either form of request for admission is binding. By doing the opposite, the majority is the one that "elevates form over substance." *Supra* ¶ 52. Here the plaintiff was asked whether the light was green and he unequivocally admitted that it was—never changing or qualifying his testimony as was his prerogative to do. He should be bound by that admission just as he would be if he had been asked the same kind of question and given the same unequivocal answer in response to a request for admission.

¶63 In the unlikely event that the plaintiff sticks by his story in the face of the traffic camera or twenty-seven nuns, I suppose my reaction is either bewilderment or mad respect. Such a plaintiff surely is entitled to qualify or retract his prior admission. But if he stands by his unequivocal admission, he is in no position to insist on a trial under our established system of pretrial procedure.

¶64 A deponent's admission is not rendered equivocal by a mere acknowledgement of contrary testimony from another witness. The deponent must actually equivocate—state that contrary evidence undermines his confidence in his memory of the color of the traffic light. And that never happened here. Luis repeatedly and consistently insisted on the accuracy of his assertion that the light was green. He never backed away from that insistence.

¶65 This observation deals with the majority's concerns about "the realities of litigation practice"—the possibility that a deponent may be "'pushed into an admission by the ingenuity or persistence of adverse counsel.'" *Supra* ¶ 53 (quoting 2 ROBERT P. MOSTELLER ET AL., MCCORMICK ON EVIDENCE § 258 (8th ed. 2020)). Luis Luna did not make a random slip in response to the sharp ingenuity of a crafty lawyer. He was asked simple, straightforward questions about the color of the traffic light. And he gave the same clear answer *seven times over* ((1) when asked "Did you see the color of the traffic light as you were entering the intersection?" answering "We were heading that way. We had the right-of-way"; (2) when asked "Did you see the color of the light as you were entering the intersection?" answering "Yes. It was green"; (3) when asked "You don't know how far back you were from the intersection when you first noticed the color of the light?" answering "I will repeat myself. It was green when we went through it"; (4) when asked "So what I want to know is exactly where was your car in relation to the intersection when you first noticed the color of the light?" answering "Well, we saw it—we were driving, we saw that it was green, and when we passed through the intersection it was already green"; (5) when asked "Was the light always green from the moment that you first saw it until the moment of the impact?" answering "Yes"; (6) when asked "Did the seat belt tighten on impact?" answering "Somewhat . . . . I will repeat again. When we went through, the light was green"; (7) when asked "based on your previous testimony . . . you were absolutely adamant that the light was green as you proceeded through the intersection; is that correct?" answering "Yes").

¶66 It wouldn't take much "comb[ing]" of the deposition transcript, *supra* ¶ 53 n.11, to find these statements. A simple search

for "color" and "green" would identify each of Luis's seven statements. Once those statements are identified, a retraction or correction would be a simple move.

¶67 There is no "mischief" or "game playing," *supra* ¶ 53, n.11, in a rule requiring this kind of correction as a prerequisite to going to trial on the question of the color of the traffic light. The real mischief, in my view, is in allowing a party to insist on a trial to allow a jury to decide whether "the facts are other than what the litigant swears they are." *Luna*, 2019 UT App 57, ¶ 19.

¶68 The majority's concerns are thus not implicated by the rule I am advocating. Under my approach, if and when a deponent's answer is an imprecision given in response to "high pressure" tactics of counsel, the law would allow the deponent to retract or qualify his admission if those tactics gave rise to a plausible reason for doing so. *See supra* ¶ 61. But unless and until the deponent does so, he should be held to his unequivocal admission—whether it is given in a deposition, a pleading, or a response to a request for admission.

¶69 Our system is not an abstract "truth-finding" machine. It is a system for resolving disputes. *See Univ. of Utah*, 229 P. at 1104 (explaining that courts "have no power to decide abstract questions" or to render judgments "in the absence of an actual controversy"). And the first step in resolving a dispute is to determine whether one exists, and if so, to define its scope. This is in large part the function of our pretrial process. The established rules of that process dictate which points are in dispute between the parties and which ones are not.[18] Our courts are, in other words, committed to truth-finding only once a dispute has been *established and defined* for trial. *Accord supra* ¶ 3 (referring to the "truth-finding function of the *trial* process") (emphasis added).

---

[18] *See, e.g.*, *State ex rel Rd. Comm'n v. Petty*, 412 P.2d 914, 917 (Utah 1966) (explaining that a primary purpose of the rules of procedure is to "eliminat[e] noncontroversial matters, and . . . identify[], narrow[] and clarify[] the issues on which contest may prove to be necessary"); *Transamerica Title Ins. Co. v. United Res., Inc.*, 471 P.2d 165, 167 (Utah 1970) (describing pretrial procedure as "a method for searching out and facilitating the resolution of issues which are not in dispute, and of settling the rights of the parties without the time, trouble and expense of a trial").

¶70 Our trials accordingly proceed on the basis of party admissions and pleadings—whether or not they jibe with a judge's sense of "what actually occurred." *See supra* ¶ 43 (complaining of the "injustice" of denying a party the right to contradict himself at trial and "let the trier of fact determine what actually occurred"). And this is a core feature—not a bug—of our procedural system. *See Utah Stream Access Coal. v. VR Acquisitions, LLC*, 2019 UT 7, ¶¶ 36–37, 439 P.3d 593 (noting that a "core component of our adversary system . . . . leave[s] it to the parties" to identify claims to be litigated at trial, and holding that "we have never thought it our business to second-guess those judgments").

¶71 This feature is aimed at least in part at conserving judicial resources—reserving them for points of dispute between parties. *See Luna*, 2019 UT App 57, ¶¶ 17–18. I see no reason to doubt that it will have that effect across the broad run of cases.

¶72 Perhaps there will be occasional disputes "over whether" a given "deposition statement actually qualifies as a judicial admission." *Supra* ¶ 42. But those disputes are already inherent in our pretrial system. The majority's rule, moreover, will just kick the can down the road on any such disputes—requiring the additional time, expense, and unnecessary formality of a rule 36 request for admission to confirm any admissions made in depositions. And ultimately, there can be no doubt about what really compounds litigation costs. Trial is by far the most costly and time-consuming element of the civil litigation process. *See Kerr v. City of Salt Lake*, 2013 UT 75, ¶ 57, 322 P.3d 669, (explaining that "economically and practically" trials are "enormously significant," "terribly costly[,] and time-consuming"). It makes no sense to *require* costly, time-consuming trials on points that the parties *agree on* just because the process of sussing out those points could entail some form of less-costly "motion practice." *Supra* ¶ 42.

¶73 I also doubt that such "motion practice" will be very common, extensive, or costly. The main point of concern for the majority goes to the inquiry called for by the court of appeals into "whether 'giving binding effect to the statement would be consonant with the policies underlying the "judicial admission" rule.'" *Supra* ¶ 42 (quoting *Luna*, 2019 UT App 57, ¶ 28.). But this element is nowhere established in our settled standards for pretrial admissions. And I would reject it on that basis—and because it adds unnecessary subjectivity and uncertainty.

¶74 The court of appeals added this element in anticipation of the possibility that in certain circumstances "holding a party to his testimony" could be "unjust or at odds with the policies underlying the rule" on judicial admissions. *Luna*, 2019 UT App 57, ¶ 27. These are worthwhile concerns. But to my knowledge no other court has endorsed the need for an open-ended, subjective fourth element like the one established below. And I see no need for such an element to account for the court of appeals' concerns. Our law on pretrial admissions already does so, in requiring that an admission be unequivocal, and in allowing the party to qualify or retract it in appropriate circumstances.

¶75 I would apply that standard here. And I would otherwise affirm the court of appeals across the board—in holding that Luis Luna was properly barred from introducing testimony to contradict his unequivocal admission that the light was green, and in affirming the district court's determination that Maria Luna was entitled to judgment as a matter of law.

¶76 Luis's deposition testimony is as unequivocal as it could possibly be. He testified clearly and repeatedly that Maria had a green traffic light as she entered the intersection. Surely Luis knew that this was an admission against interest. Yet he repeated it *seven times* in the course of his deposition, despite numerous chances to qualify or limit the admission. I credit Luis for his candor. Had there been nuns or a traffic camera, perhaps that would have given him reason to question his view. But neither nuns nor traffic camera evidence emerged, and Luis never wavered or questioned his view. And that should be controlling here, just as it would be if Maria were required to take the further step of asking Luis to confirm his deposition statement in a written response to a request for admission. Perhaps that is exactly what will happen on remand. If so, it will highlight one of several problems with the majority's standard.

¶77 Absent the opportunity to contradict himself at trial, Luis had absolutely no evidence to support his negligence claim. And for that reason, the district court was right to grant Maria's motion for summary judgment. The district court's decision follows clearly from our decision in *Salo v. Tyler*, 2018 UT 7, 417 P.3d 581. *Salo* clarified that "our Utah summary judgment standard is in line with the federal standard set forth in *Celotex* [*Corp. v Catrett*, 477 U.S. 317 (1986)]." 2018 UT 7, ¶ 28. Under that standard, the moving party has the burden of establishing "an absence of a genuine issue of material fact and an entitlement to judgment as a matter of law." *Id.* ¶ 29.

"[T]hat showing can be made without affirmative evidence on the moving party's side *if* the question presented is one on which the nonmoving party bears the burden of persuasion at trial." *Id.* If a defendant "can show" that the plaintiff "has no evidence of essential elements of his claim[]" then the defendant is "entitled to judgment as a matter of law." *Id.* ¶ 33. This is the case here. Maria established that Luis had no evidence of an essential element of his claim for negligence—proof of breach of a standard of reasonable care—once his judicial admission was credited. And that was sufficient, as the court of appeals concluded. *See Luna*, 2019 UT App 57, ¶¶ 40–42 (noting that Maria had established that "no . . . fact witness could offer any evidence that [Maria] was driving negligently," and thus concluding that Luis was entitled to judgment as a matter of law).

¶78  I would affirm on these grounds. And I would reinforce our established rule that unequivocal pretrial admissions are binding on a party at trial unless the party qualifies or retracts them.

———————